IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BP AMOCO CHEMICAL, | ) | |
|     Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLINT HILLS RESOURCES, LLC, | ) | |
|     Defendant/Counter-Plaintiff. | ) | Consolidated Cases |
| ------------------------------------------------ | ) | (No. 05 C 5661) and |
| FLINT HILLS RESOURCES, LLC, | ) | No. 05 C 6795 |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BP CORPORATION NORTH | ) | |
| AMERICA INC., | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/counter-defendant BP Amoco Chemical Company (BP Amoco) filed an action in this court seeking a declaration that it had not breached a contract with defendant/counter-plaintiff Flint Hills Resources, LLC (Flint Hills). On October 17, 2005, Flint Hills filed counterclaims against BP Amoco for fraud and breach of contract. Flint Hills also filed a separate action against the guarantor of the contract, BP Corporation North America Inc. (BP North America) for breach of contract and fraud. The cases were consolidated and BP Amoco and BP North America filed motions to dismiss Flint Hills' counterclaims and amended complaint, respectively. On August 25, 2006, this court granted, in part, BP Amoco's motion to dismiss Flint Hills' counterclaims. We granted the motion as to the fraud claim and denied it as to the breach of contract claim. We granted BP North America's motion to dismiss Flint Hills' amended complaint. Flint Hills now asks us to reconsider our order as it relates to

misrepresentations within the contract itself. For the following reasons, we grant Flint Hills' motion to reconsider and vacate the portion of the August 25, 2006, order dismissing Flint Hills' fraud claim against BP North America, and its fraud counterclaim against BP Amoco. We reinstate Flint Hills' request for punitive damages related to those claims.

## BACKGROUND

The background of this case was laid out in our August 25, 2006, opinion, and we reiterate only those portions relevant to this reconsideration. BP Amoco entered into a contract with Flint Hills for the sale of a chemical plant in Joliet, Illinois, on March 29, 2004, for $225,000,000. After extensive negotiations, the parties finalized a 131-page sales agreement. BP North America agreed to serve as guarantor, and entered into a Performance Guarantee with Flint Hills on May 28, 2004.

The sales agreement contained numerous clauses. Crucial to this motion are "Seller's Representations and Warranties" (7.1), the "Entire Agreement" clause (16.7), the "Independent Investigation" clause (7.3), and an "Exclusive Remedy" provision (13.6), which limited the remedies available to the parties for breaches of contract or other claims arising out of the contract.

Flint Hills based its fraud claims, in part, on alleged misrepresentations contained in the contract – specifically contained in § 7.1. These alleged misrepresentations are: "(1) 'All of the Joliet Plant process units and buildings are structurally sound, and all tangible Assets have been maintained substantially in accordance with normal industry practice, are in substantially good operating condition and repair for their age.' Agreement §7.1(d)(ii); (2) 'The annualized maximum demonstrated sustainable production of the TMA, purified isophtalic acid and MAN production units at the Joliet Plant are 71,000 metric tons, 170,000

metric tons, and 51,000 metric tones, respectively, with the product produced meeting Seller's standard specifications therefor, recognizing that such demonstrated capacity does not take into account planned or unplanned downtime.' Agreement§7.1(d)(ii); (3) British Petroleum has 'not reduced [its] maintenance activity or sustaining capital investment in anticipation of the transactions contemplated by this Agreement.' Agreement §7.1(d)(v); and (4) British Petroleum was in compliance with each of its Environmental permits for the Plant and all Environmental laws that require reporting of deviations and/or certifications of compliance. The plant was in material compliance with all Environmental Laws that are not subject to deviation reporting or compliance certification requirements and all of its reports and certifications of compliance required under those Environmental Laws and Permits had been filed and were complete and accurate. Agreement §7.1(I) and (j)."

BP Amoco and BP North America argued that Flint Hills' fraud claim could not stand – in part because it was based on extra-contractual representations which Flint Hills was precluded from relying on pursuant to §§16.7 and 7.3 – and Flint Hills was barred from seeking punitive damages by §13.6. We agreed, and held that Flint Hills' fraud claim must be dismissed as to the extra-contractual representations because Flint Hills could not claim justifiable reliance on those representations in light of §§16.7 and 7.3. We went further, and dismissed Flint Hills' fraud claim based on contractual representations because of the policy considerations relating to the economic loss doctrine. We then dismissed Flint Hills' claim for punitive damages because it was premised on the fraud claim.

Flint Hills has moved this court to reconsider part of its order dismissing the fraud claim, specifically referring to the alleged misrepresentations in the contract itself. Flint Hills argues that we granted BP Amoco and BP North America more than they requested when we

dismissed the fraud claim based on contractual misrepresentations. It argues we overstepped our bounds by considering the economic loss doctrine when neither party had briefed the issue. It claims that the economic loss doctrine does not bar fraud claims based on contractual representations, and that to bar the fraud claim here would actually run afoul of the policy concerns we noted in our decision. BP Amoco responded, arguing that the economic loss doctrine does in fact bar Flint Hills' fraud claim based on contractual representations.

## ANALYSIS

A motion to reconsider is an interlocutory order permissible within the inherent authority of the district court, the common law, and/or under Federal Rule of Civil Procedure 54(b). Orange v. Burge, 451 F. Supp. 2d 957, 960-961 (N.D. Ill. 2006). The Seventh Circuit has said that a motion to reconsider is appropriate where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. Id.; Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990).

Flint Hills argues that we should reconsider our order because we addressed the economic loss doctrine in deciding whether Flint Hills' fraud claim could stand under Illinois law. Flint Hills argues that this was error as neither it nor BP Amoco and BP North America briefed the issue of the economic loss doctrine, and thus the issue was outside the adversarial issues presented to the court by the parties. We disagree. As was stated in In re Kleckner, 81 B.R. 464, 466 (Bankr. N.D. Ill. 1988), "[w]ere the Court solely restricted to the arguments of

counsel and the research provided, there would be many uninformed and just plain incorrect decisions rendered. Rather, the Court must be free to research the law and apply logical extensions of arguments made by counsel." Here, though the parties did not brief it, the economic loss doctrine is relevant to this case, as Flint Hills is seeking to recover solely for economic losses due to a breach of contract and fraud. Thus, we did not exceed our bounds by addressing the issue.

Yet, we agree with Flint Hills that our decision must be partially reconsidered. Upon review of our order, we find that in examining the fraud claim relating to alleged misrepresentations within the contract, we continued to focus on the extra-contractual misrepresentations, thereby misunderstanding Flint Hills' argument and misconstruing the issue. We now reconsider that part of the order and analyze whether, under Illinois law, Flint Hills can maintain a fraud claim based on contractual misrepresentations.

Illinois generally does not permit punitive damages for breaches of contract, and does not recognize a tort for willful breach of contract. Morrow v. L.A. Goldschmidt Associates, Inc., 112 Ill. 2d 87, 94-95, 492 N.E.2d 181 (Ill. 1986). Illinois does recognize that if the conduct complained of rises to the level of an independent tort, for which punitive damages may be sought, plaintiff may sustain claims for both that tort and a breach of contract on the same facts. Sabath v. Mansfield, 60 Ill. App. 3d 1008, 1014, 377 N.E.2d 161, 168 (Ill. App. Ct. 1978)

There is a limitation, however, in that, generally, if plaintiff's damages are purely economic in nature, it cannot maintain a claim in tort based on breach of contract facts. This is known as the "economic loss doctrine," espoused in Moorman Mfg. Co. V. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443 (Ill. 1982). Economic loss exists where "the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a

particular quality so that it is fit for ordinary use." *Id.* at 88. Contract law is the best remedy "for losses suffered by a purchaser for disappointed expectations due to deterioration, internal breakdown or nonaccidental cause," whereas "tort theory 'is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence.'" <u>Bates & Rogers Construction Corp. v. North Shore Sanitary Dist.</u>, 128 Ill. App. 3d 962, 967, 471 N.E.2d 915 (Ill. App. Ct. 1984)(citing <u>Moorman</u>, 91 Ill. 2d at 86).

The court in <u>Moorman</u> singled out three exceptions to the economic loss doctrine, where public policy concerns justify an action in tort. Those exceptions exist (1) where a plaintiff sustained damage (personal injury or property damage) resulting from a sudden or dangerous occurrence; (2) where a party intentionally makes false representations; and (3) where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations. <u>First Midwest Bank, N.A. v. Stewart Title Guar. Co.</u>, 218 Ill. 2d 326, 843 N.E.2d 327 (Ill. 2006); <u>Moorman</u>, 91 Ill. 2d at 88-89. The second exception covers claims of fraudulent inducement. <u>Johnson v. George J. Ball, Inc.</u>, 248 Ill. App. 3d 859, 867-868, 617 N.E.2d 1355 (Ill. App. Ct. 1993), as is the case in other jurisdictions as well. This is because "[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." <u>Marvin Lumber and Cedar Co. v. Elf Atochem North America, Inc.</u>, 223 F.3d 873, 885 (8th Cir. 2000)(citing <u>Huron Tool & Eng'g Co. V. Precision Consulting Servs</u>, 209 Mich. App. 365, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995).

As the Utah Supreme Court aptly stated, in reference to a similar exception under

Wyoming law, "[i]n essence, the duty to avoid fraudulent pre-contractual conduct remedies a public policy concern that Wyoming and other states will not allow contract law to override." Grynberg v. Questar Pipeline Co., 70 P.3d 1, 13 (Utah 2003). Thus, similar to personal injury and property damage, preventing fraud addresses a public policy concern above and beyond the commercial interests of the parties.

BP Amoco argues that Flint Hills' claim for fraud cannot stand under Moorman, because it requires that the alleged fraudulent misrepresentations exist outside the contract. They argue that because Flint Hills is relying on alleged misrepresentations within the contract, its claim is barred under the Illinois Supreme Court's current view of the economic loss doctrine.

The cases that BP Amoco cites in support of this argument do not even discuss the fraudulent misrepresentation exception, but instead discuss the negligent misrepresentation exception. *See* Fireman's Fund Ins. Co. v. SEC Donahue Inc., 679 N.E.2d 1197 (Ill. 1997); First Midwest Bank, N.A. v. Stewart title Guar Co., 843 N.E.2d 327 (Ill. 2006); 2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd., 555 N.E.2d 346 (Ill. 1990); Congregation of the Passion v. Touche Ross & Co., 636 N.E.2d 503 (Ill. 1994). With regards to that exception, the Illinois Supreme Court had held that the alleged misrepresentation must involve a duty that arose outside of the terms of the contract, such as the duty between a lawyer and a client. *Id.* BP Amoco, we believe, is requesting that this court extend this limitation beyond negligent misrepresentation to intentional or fraudulent conduct. Without the precedent of the Illinois Supreme Court, or even a decision of an Illinois appellate court supporting this argument, we decline to do so. *See* Kingsford Fastener, Inc. v. Hitachi Koki, U.S.A., Ltd., 2002 WL 992610, *3 n.3 (N.D. Ill. 2002)(rejecting defendant's argument that

fraud exception only applies if alleged fraud is extraneous to the contract).

While it is true that the majority of fraudulent misrepresentations addressed by the courts have existed outside of the contract (*see e.g.* Zimmerman v. Northfield Real Estate, Inc., 510 N.E.2d 409, 415 (Ill. App. Ct. 1987)), this is because, generally, representations made within a contract relate to future conduct or performance of the product in question. Projections of future conduct are not actionable through a fraud claim. Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1298-99 (7th Cir. 1993) (collecting cases). Here, the representations that Flint Hills complains of are representations of past or present facts, notably the condition of the plant prior to contracting – during the period of negotiations. Flint Hills alleges that the statements in §7.1 are representations made as to the state of the plant prior to contracting and that in that section BP Amoco misrepresented that the Joliet plant was *then* complying with environmental regulations, *then* in good repair and sufficiently maintained, *then* capable of producing the stated amount of chemicals. Section 7.1 explicitly states that the plant was already in good repair and complying with environmental regulations when the parties entered into the contract. This is not a case where, at some point after the hand-over of the plant, a component that was functioning when the sale closed suddenly malfunctioned. This is a situation where, allegedly, at the very instant when Flint Hills took over the plant, it found that prior to the sale the plant had not been complying with environmental regulations, had not been maintained, and was not capable of producing the said amount of chemicals. At least two cases, one from the Illinois Appellate Court and one from the Northern District of Illinois, have found fraud claims actionable based on misrepresentations of past or present facts within the contract. *See* Kingsford Fastener, 2002 WL 992610, at *3 n.3; Bauer v. Giannis, 359 Ill. App. 3d 897, 834 N.E.2d 952 (Ill. App. Ct.

2005). While the court in Bauer did not address the issue of the economic loss doctrine, given the widespread acceptance of the fraud exception to that doctrine we believe it is still a case to which we can look in deciding this issue.

Additionally, BP Amoco's argument that Flint Hills' fraud claim must be based on external representations fails in the context of the present contract. As the earlier order of this court made clear, the no-reliance clause in the contract prevents a claim of fraud based on external representations not explicitly referred to in the contract. This no-reliance clause explicitly excluded from its purview the representations of §7.1. Additionally, both the no-reliance clause and the exclusive remedy provision permit fraud as a cause of action for misrepresentations made by the seller. In construing a contract, we presume that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions. Bruno Benedetti & Sons, Inc. v. O'Malley, 124 Ill. App. 3d 500, 506, 464 N.E.2d 292 (Ill. App. Ct. 1984). Thus, if we were to read this contract as preventing a claim of fraud for contractual misrepresentations of past or present fact at the time the contract was made, the clauses that permit fraud as a remedy would be rendered meaningless, as fraud claims based on both contractual and extraneous misrepresentations would be barred. We decline to read the contract in this fashion.

Furthermore, we agree with Flint Hills that permitting it to go forward with its fraud claim based on contractual misrepresentations actually furthers the purpose of the economic loss doctrine, which is to uphold the reasonable commercial expectations of the parties and respect the deliberate allocation of economic risks. Moorman, 91 Ill. 2d at 78-79. Here, the parties negotiated extensively and expressly contracted that Flint Hills could rely on the representations laid out in §7.1, and thus explicitly exempted that section from the no-reliance

clause. Further, in both the no-reliance clause and the exclusive remedies provision, the parties agreed that fraud was an available remedy for misrepresentations made in §7.1. Thus, permitting the fraud claim to stand furthers the parties' right to create a contract and allocate the risks of that contract as they see fit.

Thus, we conclude that Flint Hills may sustain a claim for fraudulent inducement based upon the four alleged misrepresentations in the contract, and reinstate Count II of Flint Hills' counterclaims against BP Amoco and Count III of Flint Hills' complaint against BP North America, to the extent those claims rely on contractual misrepresentations. We further reinstate Flint Hills' request for punitive damages as it relates to the above-reinstated claims.

## CONCLUSION

For the foregoing reasons, Flint Hills' motion for reconsideration is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 24, 2007.