IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BP AMOCO CHEMICAL COMPANY, )
)
      Plaintiff/ )
      Counter-defendant, )
)
vs. ) No. 05 C 5661
)
FLINT HILLS RESOURCES, LLC, )
)
      Defendant/ )
      Counter-plaintiff. )

## MEMORANDUM OPINION AND ORDER

Plaintiff/counter-defendant BP Amoco Chemical Company ("BP Amoco") brings this motion to compel regarding plant inspection under Federal Rule of Civil Procedure 37(a) against defendant/counter-plaintiff Flint Hills Resources, LLC ("Flint Hills"). For the following reasons, we grant BP Amoco's motion.

This case arises from the sale of a refinery plant from BP Amoco to Flint Hills.[1] BP Amoco filed a complaint seeking a declaratory judgment that it had not breached the sales contract with Flint Hills. Flint Hills subsequently filed counterclaims and a separate complaint, alleging breach of contract and fraud. BP Amoco now seeks to inspect the plant and on June 13, 2006, served a Rule 34 inspection request on Flint Hills. To date that inspection has not taken place. BP Amoco alleges that Flint Hills objects to BP Amoco's need to conduct followup inspections and objects to BP Amoco's selection of Packer Engineering ("Packer") as its inspection consultant, litigation consultant, and possibly its expert at trial.

---

[1] For a full recitation of the facts, see BP Amoco Chem. Co. v. Flint Hills Res., LLC, 2006 U.S. Dist. LEXIS 64073 (N.D. Ill. Aug. 25, 2006).

Packer performed testing and analysis work at the plant during the time BP Amoco owned it. After Flint Hills took possession of the plant, it entered into a contract with Packer for similar work. Three engineers from Packer engaged in testing and analysis for Flint Hills relating to certain components in the plant, which are the subject of three of Flint Hills' 73 claims of defective equipment. Two reports were produced relating to these components, both of which were delivered to BP Amoco in discovery, and both of which BP Amoco attaches as exhibits to its motion. It seeks to file one report under seal pursuant to the court's standing protective order of February 15, 2006. We grant BP Amoco's motion to file that report under seal.

BP Amoco argues that it is entitled to inspect the plant and should be entitled to follow-up inspections because it would be impossible to inspect, run tests and do followup all in one visit. It also argues that it should be permitted to use Packer as its litigation consultant in this inspection, as well as generally, as there is no conflict of interest arising from Packer's work with Flint Hills. Flint Hills, for its part, does not argue that BP Amoco is not entitled to either initial or followup inspections, and we interpret this to mean that Flint Hills has withdrawn any previously held objections. Flint Hills centers its argument on the disqualification of Packer as litigation consultant to, and possible expert witness for, BP Amoco.

Federal courts have inherent power to disqualify expert witnesses where or when it is necessary to protect the integrity of the adversary process, and/or to promote public confidence in the legal system. <u>Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers LLC</u>, 202 F.R.D. 426 (E.D. Pa. 2001). The majority of courts dealing with this issue have held that the standard for expert disqualification differs from that of attorney disqualification because "experts are not advocates in the litigation but sources of information and opinions."

English Feedlot v. Norden Lab., Inc., 833 F. Supp 1498, 1501 (D. Colo. 1993); *see also* Great Lakes Dredge & Dock Co. v. Harnischfeger Corp., 734 F. Supp. 334 (N.D. Ill. 1990); Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080 (C.D. Cal. 2000); In re Ambassador Group, 879 F. Supp. 237 (E.D.N.Y. 1994); Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271 (S.D. Ohio 1988); Chamberlain Group, Inc. v. Interlogix, Inc., 2002 U.S. Dist. LEXIS 6998 (N.D. Ill. Apr. 18, 2002); EEOC v. Locals 14 & 15, International Union of Operating Engineers, 1981 U.S. Dist. LEXIS 11194 (S.D.N.Y. 1981); *but see* Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588 (D. Minn. 1986); Conforti & Eisele, Inc. v. Div. of Building & Construction, 170 N.J. Sup. 64, 405 A.2d 487 (N.J. 1979). We agree with the reasoning that since experts perform different functions than attorneys, the standard for their disqualification should be different. English Feedlot, 833 F. Supp. at 1501.

Courts apply a two-part test to determine whether an expert should be disqualified. The court first asks whether the party seeking disqualification acted reasonably in assuming that a confidential relationship existed and, second, whether confidential information was exchanged requiring disqualification of the expert. Great Lakes, 734 F. Supp. at 337. If both questions are answered in the affirmative, disqualification is warranted. However, if either inquiry is answered in the negative, disqualification is not appropriate. Greene, Tweed, 202 F.R.D. at 429. Disqualification of an expert is a "drastic measure which courts should hesitate to impose except when absolutely necessary." Commonwealth Ins Co. v. Stone Container, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001). Thus, the party seeking disqualification has the heavy burden of showing both the existence of a confidential relationship and the transmission of confidential information, and cannot satisfy this burden by relying on "merely conclusory or ipse dixit assertions." Greene, Tweed, 202 F.R.D. at 429.

Prior to determining whether individual experts from Packer should be disqualified, we deal first with whether the entire firm should be. BP Amoco notes that Packer employs 167 engineers, only three of whom have done any work for Flint Hills. Flint Hills contends that an analogy should be drawn from the Rules of Professional Conduct, which require the disqualification of a firm if some of its attorneys have a conflict of interest. Those rules do not apply to expert witnesses, however, for the reasons noted above. Thus, courts have refused to impute a conflict of interest on other members of an expert's firm, choosing instead to apply safeguards such as screens to prevent the transmission of confidential information. *See e.g.* Viskase Corp. v. W.R. Grace & Co. Conn., 1992 U.S. Dist. LEXIS 619 (N.D. Ill. January 24, 1992); Stencel, 174 F. Supp. 2d at 1088; In re Ambassador Group, Inc. Litig.,879 F. Supp. at 245; Food Lion, Inc. v. Capital Cities/ABC Inc., 1996 WL 575946 (M.D.N.C. Sept. 6, 1996); City of Springfield v. Rexnord Corp., 111 F. Supp. 2d 71 (D. Mass. 2000); Commonwealth, 178 F. Supp. 2 at 949; Kendall Coffey, *Inherent Judicial Authority and the Expert Disqualification Doctrine*, 56 FLA. L. REV. 195, 219 (Jan. 2004).

Here, only three, Carlson, Jensen and Howe, of the 167 engineers, have performed work for Flint Hills. Furthermore, the declaration of Kenneth Packer, head of Packer, states that these three will not consult, testify or provide information regarding the reports they either authored or reviewed, as dictated by the agreement with Flint Hills. He further states that (if the court finds that the three engineers working with Flint Hills may testify as to other claims) "to the degree that the laboratory work described may apply to Flint Hills Claim No.'s [sic]18, 54, and 67, Messrs. Carlson, Jensen and Howe will not testify with regard to these three claims." Thus, we find a sufficient screen has been put in place permitting, at the very least, the other engineers not involved with Flint Hills to be employed as litigation consultants and

testifying experts for BP Amoco.

What remains, then, is whether the engineers who worked for Flint Hills may be consultants or experts for BP Amoco. Flint Hills asserts that a confidential relationship existed between itself and Packer. It cites the service agreement that Flint Hills and Packer entered into, which included a confidentiality provision stating that during the relationship Flint Hills will provide Packer with confidential information relating to Flint Hills' business and that at all times Packer is not to use this information for any purpose other than providing services to Flint Hills. We agree that this is sufficient evidence of a confidential relationship and that Flint Hills had a clear expectation that any confidential information divulged to Packer during the contract would remain confidential. Paul, 123 F.R.D. at 279.

We must then determine whether any confidential information actually passed between Flint Hills and Packer. Flint Hills points to the declaration of Rick Morris, the Reliability Technical Manager at Flint Hills. He states that during the course of Packer's work for Flint Hills, it "had access to and used confidential information concerning Flint Hills' business operations including Flint Hills process information and patterns of operation. For example, it had access to certain service conditions, including those relating to temperature, pressure, fluid and chemical treatment programs which were being used on equipment in order to assist its investigations and conclusions pertaining to corrosion."

Morris states that Packer's two reports are specific examples of work performed in which Packer "used, developed or discovered confidential information." Morris further states that Packer "had access to and received confidential information about the business operations and physical processes of the Joliet Plant."

BP Amoco argues that Packer received no such confidential information. It first points

to the declaration of Packer, who rebuts Morris' declaration, stating that no confidential or proprietary information was received by Packer during the course of its work, and any job-specific information would not be disclosed to anyone but Flint Hills. He states that the work done for Flint Hills was not of a litigious nature and that the information Morris purports as being confidential, such as temperatures and pressures, was not confidential as it related to the testing and analysis work done by Packer. BP Amoco further argues that Flint Hills has never disclosed any Packer engineer as a potential fact witness in its Rule 26(b) disclosures. BP Amoco further states that as part of the discovery process it has received both Packer reports, one of which was not considered by Flint Hills to be confidential.

We agree with BP Amoco that Flint Hills has failed to satisfy its burden of proof. Flint Hills' assertions that confidential information was transmitted to Packer are, for the most part, vague and conclusory. The more specific information has been rebutted by Packer as not being confidential in nature. Further, we agree with BP Amoco that any confidential information transmitted by Flint Hills to Packer is (1) already within BP Amoco's knowledge (because it owned the plant before Flint Hills), (2) not relevant to the current litigation (and thus will be kept confidential by Packer), or (3) relevant to the current litigation, making it independently discoverable under Rule 26 and the court's protective order. Furthermore, the fact that one of the reports received by BP Amoco was not even designated by Flint Hills as confidential further undermines Flint Hills' argument for disqualification. Additionally, as the nature of Packer's work for Flint Hills was not in anticipation of this litigation, nor does it appear that Packer consulted with counsel for Flint Hills regarding its work, the concerns of protecting information under the attorney-client privilege and work product doctrines do not apply here. Thus we find, especially in light of the fact that Packer agrees to the screening

procedure described above, its engineers need not be disqualified from consulting with or providing expert testimony for BP Amoco.[2]

## CONCLUSION

For the foregoing reasons, we grant BP Amoco's motion to file its exhibit under seal, and grant its motion to compel.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 6, 2007.

---

[2]Flint Hills claims that the service agreement is still in place and Packer is still doing work for Flint Hills. Flint Hills notes that the service agreement remains in effect until one party terminates it upon 30 days' notice, which, it states, has not occurred. BP Amoco asserts that this is disingenuous for the reason that since the time that Packer notified Flint Hills of its intention to consult with BP Amoco, the only interaction between the two parties has been a minor phone call in July 2006, from Flint Hills to one of Packer's engineers. Packer's declaration affirms this and states that at the time of the phone call Flint Hills was fully aware of Packer's intentions to work with BP Amoco. Packer believes that the service contract has effectively ended since Packer has done no work for Flint Hills since June 2006. We accept the testimony of Packer that the contract is effectively terminated and assume that means Packer does not intend to do additional work for Flint Hills during the course of this litigation.