**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BP AMOCO CHEMICAL COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter–Defendant, | ) | |
| | ) | Consolidated Case No. 05 C 5661 |
| v. | ) | |
| | ) | |
| FLINT HILLS RESOURCES, LLC, | ) | |
| | ) | |
| Defendant/Counter–Plaintiff. | ) | |
| ———————————————————— | ) | |
| | ) | |
| FLINT HILLS RESOURCES, LLC, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BP CORPORATION NORTH AMERICA INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff/Counter-Defendant BP Amoco Chemical Company ("BP Amoco") sued

Defendant/Counter-Plaintiff Flint Hills Resources, LLC ("Flint Hills") seeking a declaratory

judgment that it had not breached the Asset Purchase and Sale Agreement ("PSA") pursuant to

which it had sold a chemical manufacturing plant (the "Joliet Plant") and related assets to Flint

Hills.  (R. 8-1, Am. Compl.)  The sale price was over $300 million.  Flint Hills filed

counterclaims against BP Amoco for fraud and breach of contract.  (R. 14-3, Answer &

Countercls.)  Flint Hills also asserts breach of contract against the guarantor of the PSA, BP

Corporation North America Inc. ("BP North America").  (R. 103-1, Flint Hills' Third-Party

Compl.)  In this motion, BP Amoco and BP North America (collectively, "BP") seek partial summary judgment on Flint Hills' alleged "damages" claims.  (R. 245-1, BP's Mot. for Partial Summ. J.)  For the reasons discussed below, the Court denies BP's motion.

## BACKGROUND

In light of the two summary judgment rulings already issued, the Court assumes the parties' intimate familiarity with the details of the case, the web of issues raised, and the Court's prior decisions.  A brief rendition of the background facts relevant to the motion at hand follows.

According to Flint Hills, BP breached various representations and warranties contained in Section 7.1 of the PSA.  BP represented, among other things, the production capacity of the production units at the Joliet Plant, the condition of certain assets, and that BP Amoco had not reduced spending in anticipation of the sale.  The PSA also includes a number of environmental compliance warranties.  Flint Hills contends that the PSA requires BP to indemnify Flint Hills for the damages caused by BP's alleged breach of these representations.  Flint Hills seeks recovery of its costs of repair[1] and, in the alternative, the diminution in value caused by BP's alleged breaches of the PSA representations.  (R. 360-1, Def.'s Supp'l Mem. at 2.)

BP promised to indemnify Flint Hills for any breach of a representation for which Flint Hills incurred losses greater than $75,000.  As damages for its approximately fifty separate claims, Flint Hills seeks repair and replacement costs totaling over $125 million.  (R. 324-1, Def.'s Resp. Br. at 19.)  Alternatively, Flint Hills seeks $144 or $162 million as the diminution

---

[1] Flint Hills notes that it uses "'cost of repair' as short-hand for costs to repair, costs to replace where appropriate, cost to achieve compliance, and cost to increase production to the represented rates."  (R. 360-1 at 2 n.1.)  This understanding accurately encompasses the recovery which, in the context of the alleged breaches of PSA Section 7.1, might be possible under a "cost of repair" measure of damages.

in value of the warranted property—the difference between its fair market value ("FMV") as warranted and its fair market value as received—caused by BP's alleged breach of contract and fraud. Flint Hills also seeks punitive damages on its fraud claims. In the motion now before the Court, BP requests partial summary judgment on Flint Hills' damages claims on the grounds that Flint Hills cannot satisfy the legal standards for proving damages. (R. 245-1 at 1.)

Section 13.2 of the PSA, "Indemnification by Seller," provides:

> To the fullest extent permitted by Law, Seller, in accordance with the terms of this Article 13, hereby agrees to Indemnify Buyer . . . from and against, any and all Losses incurred or required to be paid by any Buyer Indemnified Party . . . , which arise out of, relate to or result from any of the following: (a) any breach of any warranty or representation of Seller contained in Section 7.1 . . . .

(R. 14-3 at 163, Ex. A to Answer & Countercls., Purchase & Sale Agreement § 13.2.) In Section 13.6 of the PSA, the parties agreed that, except for fraud, the remedies set out in Article 13 are the "sole and exclusive remedies" available for claims arising out of the PSA. (R. 322-1, Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 1.) Specifically, Section 13.6 of the PSA states:

> Except for . . . fraud, any claim or cause of action based on, arising out of or relating to this Agreement or Implementing Agreements must be brought by either Buyer or Seller, subject to the applicable provisions, conditions and limitations of this Agreement or Implementing Agreements, whether such claim arises out of contract, tort or otherwise. * * *

> Except for . . . fraud, the provisions of Article 13, Section 2.8(b) and Section 8.1(b) are intended to be the sole and exclusive remedies between the parties for the matters covered by such provisions. * * *

> SELLER WILL NOT BE LIABLE TO BUYER FOR ANY LOSS OF PROFIT, LOSS OF USE, SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES SUFFERED BY BUYER, HOWSOEVER ARISING UNDER THIS AGREEMENT, WHETHER BASED ON BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE, STRICT LIABILITY OR OTHERWISE, INCLUDING WITHOUT LIMITATION NEGLIGENCE OF SELLER. . . . EACH PARTY AGREES THAT IT WILL NOT SEEK AND HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO OR FOR PUNITIVE OR EXEMPLARY DAMAGES AS TO ANY DIRECT

CLAIM ARISING IN CONNECTION WITH THIS AGREEMENT.

(R. 14-3 at 188-89, PSA § 13.6 (capitalization in original).)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, ---, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (citing Fed. R. Civ. P. 56(e)(2)). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*; *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## ANALYSIS

As a threshold matter, Flint Hills contends that this partial summary judgment motion is improper under Federal Rule of Civil Procedure 56 because it could dispose only of some portion of a claim less than the whole. (R. 324-1 at 29-30.) This argument fails. The Court may

consider the damages issues raised in this summary judgment motion.  *See Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 767 (N.D. Ill. 2005) (summarizing cases); *Ace Hardware Corp. v. Marn, Inc.*, No. 06 CV 5335, 2008 WL 4286975, at *17 (N.D. Ill. Sept. 16, 2008) ("If Defendants cannot show that a genuine issue of material fact exists in relation to their damages sought in their counterclaim, summary judgment must be entered in favor of [Plaintiff].").  Since proof of damages is an essential element of both breach of contract and fraud claims, "a non-movant's failure to produce sufficient evidence of the damages element of its claim calls for the entry of summary judgement against that party."  *Dunkin' Donuts*, 428 F. Supp. 2d at 767.

The Court first considers the breach of contract remedies available under the PSA and Illinois law.  The Court will then evaluate BP's objections to the substance and sufficiency of Flint Hills' proposed evidence in support of its diminution-in-value damages (Part II) and cost-of-repair damages (Part III).  Finally, the Court will take up whether punitive damages are available for Flint Hills' fraud claims.

## I.    Permissible Remedies Under the PSA and Illinois Law

Section 13.6 of the PSA provides that the remedies set out in Article 13 are the exclusive remedies available for breach of contract claims under the PSA.  (Def.'s Stmt. Add'l Facts ¶ 1.) BP contends that, "[u]nder the PSA, cost-of-repair damages are the exclusive remedy, subject to the limitations and requirements imposed by the PSA and Illinois law."  (R. 361-1, BP's Supp'l Mem. at 1.)  According to BP, Article 13 of the PSA prohibits Flint Hills "from recovering damages based on diminished value or lost profits."  (R. 247-1, BP's Br. Supp. Mot. for Partial Summ. J. at 6.)  Flint Hills agrees that lost profits are not recoverable, but maintains that it can

recover diminution-in-value damages.[2]  (R. 324-1 at 13.)  Although acknowledging that it cannot

recover under both damages measures, Flint Hills contends that the PSA's exclusive remedy

provision permits, among other things, both diminution-in-value and cost-of-repair damages.[3]

(R. 360-1 at 2-3.)

## A.     Interpretation of the PSA

The PSA's plain language does not limit Flint Hills' recovery for breach of the

representations in Section 7.1 to repair costs—both cost of repair and diminution in value are

permissible measures of recovery under the PSA.[4]  Section 13.2 of the PSA provides that "[t]o

the fullest extent permitted by Law, Seller, in accordance with the terms of this Article 13,

hereby agrees to Indemnify Buyer . . . from and against, any and all Losses incurred or required

to be paid by" Flint Hills which arise out of any breach of Section 7.1.  (R. 14-3 at 163, PSA §

13.2.)  The PSA defines "Losses" to include, in relevant part, "any and all losses, damages, . . .

and liabilities, costs and expenses."  (*Id.* at 79, PSA Art. I: "Losses.")  Thus, the PSA expressly

and broadly provides that BP will indemnify Flint Hills for all "damages" "incurred" as a result

---

[2] In its Response, Flint Hills confusingly contends both that the PSA "only precludes damages based on lost profits, not damages based on Cost of Repair or on Diminution in Value" and that "the PSA includes Cost of Repair as the exclusive remedy for breach of Section 7.1." (R. 324-1 at 9-10, 13.)  In its Reply, BP repeatedly refers to Flint Hills' contention that cost of repair is the exclusive remedy for contract claims under the PSA, but never states whether it agrees with that assertion.  (R. 352-1, BP's Reply Br. at 7-8, 11, 13-14.)  To resolve this confusion, the Court requested supplemental briefing on the parties' respective positions on the remedies available under the PSA.  (R. 359-1, 3/27/09 Order.)

[3] Cost of repair is Flint Hills' preferred damages measure for its breach of contract claims; it seeks diminution-in-value damages only in the alternative.  (R. 324-1 at 15.)

[4] The parties do not dispute that diminution-in-value damages are available for Flint Hills' fraud claims, which are not governed by the PSA's exclusive remedy and indemnification provisions.  (R. 324-1 at 15.)

of a breach of Section 7.1 "to the fullest extent permitted by Law." As discussed below, under Illinois law, which governs the interpretation and enforcement of the PSA, permissible "damages" include those for diminished value.

The PSA does not expressly bar diminution-in-value damages. BP, however, suggests that several PSA provisions preclude Flint Hills from recovering diminution-in-value damages. (R. 361-1.) BP first points to Section 7.3, which provides that "except for the express representations, warranties, and indemnities contained in Sections 3.1, 7.1 and 16.1 and Article 13 hereof, . . . Seller and the other members of the BP Group make no, and expressly disclaim any, implied warranties . . . or any representation or warranty as to value." (R. 14-3 at 140, PSA § 7.3.) Section 7.3, however, does not limit whether diminution of value is a permissible way to measure Flint Hills' damages for BP's alleged breaches of Section 7.1. Not only does this provision expressly exclude the representations made in Section 7.1, but it is also irrelevant that BP did not make any representation, express or implied, as to value.

In support of its interpretation that the PSA bars diminution-in-value damages, BP next points to the PSA's express bar on the recovery of lost profits. (R. 247-1 at 8-9; R. 361-1 ¶¶ 4-5.) Specifically, BP argues that the PSA's bar on lost profit damages constitutes a bar on the diminution-in-value measure of damages (R. 361-1 ¶¶ 4-5), as well as on Flint Hills' diminution-in-value evidence. (R. 247-1 at 6, 8-9.) Section 13.6 provides that "Seller will not be liable to Buyer for any loss of profit, loss of use, special, indirect, incidental, or consequential damages suffered by buyer, howsoever arising under this Agreement." Similarly, the definition of "Losses" excludes recovery for lost profits. (R. 14-3 at 79, 188, PSA Art. 1: "Losses," § 13.6.) BP contends that these provisions preclude any measure of damages based on lost profits,

including diminution in value.[5]  (R. 361-1 ¶ 5.)  According to BP, Flint Hills "seeks to recover for purported diminution in the value of the Joliet Plant based on projected profits [Flint Hills] allegedly has lost."  (R. 247-1 at 6.)  Flint Hills responds that lost profits and diminished value are different damages measures which rely on materially different types of facts and evidence.  (R. 324-1 at 11-12.)  As a matter of contract interpretation, the PSA's bar on lost profit damages does not preclude diminution-in-value damages.  BP has not established, and the Court has no basis to conclude, that diminution-in-value damages are necessarily equivalent to lost profits.  In fact, cases cited by BP suggest multiple ways to measure diminution in value, such as asset valuation, discounted future cash flow, and comparison to similar enterprises in the market.  (R. 247-1 at 9 & n.2, 11.)  The Court considers BP's related contention—that Flint Hills' particular diminution-in-value evidence is impermissibly based on lost profits—below.

## B.    Illinois Damages Law

Section 13.2 specifically provides for indemnity to the "fullest extent permitted by Law." (R. 14-3 at 163, PSA § 13.2.)  Illinois law, including common law, governs the interpretation and enforcement of the PSA.  (*Id.* at 78, 196, PSA Art. I: "Law," § 16.14.)  Under Illinois law, courts must strictly construe contract provisions limiting remedies.  *Harris v. Walker*, 119 Ill. 2d 542, 548, 116 Ill. Dec. 702, 704, 519 N.E.2d 917, 919 (Ill. 1988); *Hicks v. Airborne Express, Inc.*, 367 Ill. App. 3d 1005, 1010-11, 306 Ill. Dec. 603, 609, 858 N.E.2d 48, 54 (Ill. App. Ct. 2006). Courts will enforce a clause limiting damages "unless it violates public policy or something in

---

[5] While not initially clear whether BP purports that the lost profits exclusion precludes all diminution-in-value damages, however measured, or just Flint Hills' particular diminution-in-value calculations using future profits, BP broadly states that the PSA precludes any diminution-in-value recovery (R. 361-1) and that "a diminution-in-value measurement necessarily incorporates expected future profits."  (R. 352-1 at 12.)

the social relationship of the parties works against upholding the clause." *Hicks*, 367 Ill. App. 3d at 1011, 306 Ill. Dec. at 609, 858 N.E.2d at 54 (internal quotation marks and citation omitted).

Even though Illinois permits parties to vary potential remedies by contract as the PSA did, if a contract does not resolve precisely how to measure damages, Illinois law will fill in the gaps. *See Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 517 (7th Cir. 1990) (finding, despite contract provision that the "contract shall be governed by [Wisconsin law]," that "[s]tate common law, however, normally governs a contract only insofar as there are gaps in the contractual language. Where the contract is clear, there is no need to examine the underlying state law"). Because the PSA does not preclude diminution-in-value damages and otherwise permits recovery of damages "to the fullest extent permitted by Law," the Court looks to Illinois law to determine whether Flint Hills can recover such damages. Diminution-in-value damages are recoverable under Illinois law; therefore, they are permissible under the PSA. Moreover, because the PSA permits recovery of either repair cost or diminished value damages, general Illinois damages law provides the controlling guidelines for determining which of the available damages measures is proper in the case at hand.

When a contract is breached, the injured party is entitled to be placed in the position it would have been in absent the breach. *Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 932 (7th Cir. 2002); *Sharon Leasing, Inc. v. Phil Terese Transp., Ltd.*, 299 Ill. App. 3d 348, 356, 233 Ill. Dec. 876, 882, 701 N.E.2d 1150, 1156 (Ill. App. Ct. 1998). It is well settled under Illinois law that the measure of damages for breach of warranty involving injury to real property, even in a commercial dispute, is generally the cost of correcting the defective condition. *Park v. Sohn*, 89 Ill. 2d 453, 464, 60 Ill. Dec. 609, 615, 433 N.E.2d 651, 657 (Ill. 1982); *Arch of Ill., Inc. v.*

*S.K. George Painting Contractors, Inc.*, 288 Ill. App. 3d 1080, 1082, 224 Ill. Dec. 428, 429, 681 N.E.2d 1049, 1050 (Ill. App. Ct. 1997). "If, however, the defects could be corrected only at a cost unreasonably disproportionate to the benefit to the purchaser, or if correcting them would entail unreasonable destruction of the builder's work, the amount by which the defects have reduced the value of the property should be the measure of damages." *Park*, 89 Ill. 2d at 464, 60 Ill. Dec. at 615, 433 N.E.2d at 657; *Arch*, 288 Ill. App. 3d at 1082, 224 Ill. Dec. at 429-30, 681 N.E.2d at 1050-51 (noting that if exception applies "the measure of damages is the amount by which the defects have reduced the value of the property as a whole"); *Meyers v. Woods*, 374 Ill. App. 3d 440, 453-54, 312 Ill. Dec. 760, 772, 871 N.E.2d 160, 172 (Ill. App. Ct. 2007).

As this is not a construction case, diminution-in-value damages may be appropriate here if the repair costs are "unreasonably disproportionate to the benefit to the purchaser" or are grossly "disproportionate to the results obtained," *Witty v. C Casey Homes, Inc.*, 102 Ill. App. 3d 619, 625, 58 Ill. Dec. 249, 254, 430 N.E.2d 191, 196 (Ill. App. Ct. 1981). The party seeking to recover "bears the burden of proving that he or she sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196, 199 Ill. Dec. at 584, 634 N.E.2d at 423 (Ill. App. Ct. 1994); *Meyers*, 374 Ill. App. 3d at 456, 312 Ill. Dec. at 774, 871 N.E.2d at 174 (dissenting opinion). "The determination of which measure of damages to apply is usually a question for the jury. The jury should be permitted to hear evidence on both the cost of repairs and the diminution in value. Then, the jury should be instructed that the usual measure of damages is the cost of correcting the defects and that the diminution-in-value method applies only if it finds that one of the two exceptions exist." *Arch*, 288 Ill. App. 3d at 1082-83, 224 Ill.

Dec. at 430, 681 N.E.2d at 1051 (citations omitted). "The damages awarded by a jury must be measured by a legal standard, and that standard must guide the jury's determination as to what sum would compensate the injured party. Accordingly, while the amount of recoverable damages is a question of fact for the jury, the measure of damages upon which the jury's factual computation is based is a question of law for the court, and the court's instructions should limit the jury's consideration to facts that are properly a part of the damages allowable." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 252, 305 Ill. Dec. 584, 604, 856 N.E.2d 389, 409 (Ill. 2006) (citations omitted).

In this case, Flint Hills alternatively seeks cost-of-repair and diminution-in-value damages. Therefore, Flint Hills is responsible for proving its claimed damages to the extent required by Illinois law. *See Witty*, 102 Ill. App. 3d at 620, 58 Ill. Dec. at 251, 430 N.E.2d at 192 (affirming trial court's refusal to award cost-of-repair damages when trial court held that diminution in value was proper damages measure because repair of defective brick was impractical and plaintiffs presented no evidence of home's loss in value).

BP argues that the PSA preempts Illinois damages law by permitting only cost-of-repair damages, but at the same time argues that other favorable aspects of Illinois law still limit Flint Hills' potential recovery. Quite simply, BP cannot have it both ways. BP maintains that, even though Flint Hills cannot recover them, Flint Hills must prove its diminution-in-value damages with competent evidence and then convince the jury that its cost-of-repair damages are lower than the unavailable diminution-in-value damages in order to recover cost-of-repair damages. (R. 247-1 at 9-14.) BP seemingly reads the PSA as prohibiting Flint Hills from recovering any damages whatsoever if a jury finds that Flint Hills' diminution-in-value damages are

disproportionate to its cost-of-repair damages or the allocated value of the defective assets. Contract terms "should be construed so that the contract is 'fair, customary and such as prudent persons would naturally execute,' and is 'rational and probable.'" *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (quoting *Foxfield Realty, Inc. v. Kubala*, 287 Ill. App. 3d 519, 524, 223 Ill. Dec. 52, 55, 678 N.E.2d 1060, 1063 (Ill. App. Ct. 1997)).  It strains credulity to suppose that sophisticated parties would have bargained for the bizarre damages scheme for which BP advocates.

## II.     Diminution-in-Value Measure of Damages

BP asserts that Flint Hills cannot recover either its claimed diminution-in-value or cost-of-repair damages because its diminution evidence is legally deficient and thus cannot support its damages claims.  Specifically, BP argues that Flint Hills cannot recover its claimed diminution-in-value damages because the diminished value damages calculated by Flint Hills' experts are, under the law, damages for lost profits, recovery of which is barred by the PSA.  (R. 247-1 at 9.) BP further contends that substantive deficiencies in Flint Hills' proof of its diminution-in-value damages preclude Flint Hills from recovering either measure of damages because, according to BP, Illinois law requires competent proof of both damages measures.  (*Id.* at 8-14.)  Finally, BP maintains that Flint Hills' claimed repair costs are grossly disproportionate to the value of the items repaired, and thus cannot be recovered under Illinois law.  (*Id.* at 13-14.)  Viewing the evidence in a light most favorable to Flint Hills, a reasonable jury could properly award Flint Hills its claimed diminution-in-value damages.

### A.     Impact of the PSA's Bar on Lost Profits

BP first argues that Flint Hills' diminution-in-value evidence is barred and legally

12

deficient because it contravenes the PSA's bar on recovery of lost profits. Flint Hills' damages experts used discounted projected future cash flow analyses in calculating their diminution-in-value estimates. (*Id.* at 9.) According to BP, courts consider discounting future cash flows to be economically equivalent to claims for lost profits. (*Id.* at 8-9.) Flint Hills responds that the cases BP relies on to support this proposition hold only that it would be improper to recover lost profits in addition to diminution in value when doing so would result in double recovery. (R. 324-1 at 12-13.) Resolution of this issue requires the Court to evaluate the bases of the experts' opinions, whether Flint Hills' experts used discounted future cash flow in a way that might run afoul of the PSA's lost profits prohibition, and whether discounted future cash flow is indeed equivalent to recovery of lost profits, either in general or as employed by Flint Hills' experts. Yet, the parties have not provided the Court with the necessary information to determine if Flint Hills' diminution-in-value evidence is legally equivalent to lost profits. Nor did the parties fully present the issues of the scope, meaning, and relevance of the diminution-in-value expert reports within this summary judgment motion to permit the Court to engage in a substantive evaluation of Flint Hills' proposed expert evidence. Accordingly, the Court cannot resolve at this point whether recovery of these particular experts' diminution-in-value estimates would necessarily be equivalent to recovery of lost profits. It is sufficient to note that the expert reports do not, on their face, contravene the PSA's bar on the recovery of lost profits.

**B.      Flint Hills' Diminution-in-Value Evidence Is Facially Sufficient To Survive Summary Judgment**

BP raises a number of arguments in support of its assertion that Flint Hills lacks legally competent evidence to prove the diminution in value caused by BP's breach. BP first notes that Flint Hills has no evidence which identifies the diminution in value of the specific equipment at

issue in each of its claims, but rather has submitted only aggregated estimates of diminution. (R. 247-1 at 6.) BP also challenges the accuracy, reliability, and admissibility of Flint Hills' proposed expert testimony on diminution in value. (*Id.* at 6, 10-13.)

BP argues that, in order to recover, Flint Hills must prove the diminution in value for each claim, rather than the diminution in value of the assets as a whole. (*Id.* at 12.) In particular, BP notes that Flint Hills' comprehensive diminution-in-value expert, Ms. Bettius, does not identify how her calculated diminution-in-value damages would be allocated or impacted if Flint Hills does not prevail on all of its claims. (*Id.*) BP has not provided any viable support in the law for its argument that diminution in value is considered on an asset-by-asset basis in cases involving breach of representations. In *First National Bank of Elgin v. Dusold*, 180 Ill. App. 3d 714, 129 Ill. Dec. 416, 536 N.E.2d 100 (Ill. App. Ct. 1989), the only case BP cites in support of its position, the court reversed the trial court's damages award because there was no evidence of the diminution in value of the warranted items and because the evidence did not identify the amount spent to repair warranted items as opposed to other items, when the repair bill included costs for both warranted and unwarranted items. *Id.* at 719-20, 129 Ill. Dec. at 419-20, 536 N.E.2d at 103-04. *Dusold*, however, says nothing about whether diminution-in-value damages, as opposed to cost-of-repair damages, must be apportioned among each warranted asset. Without more, the Court cannot require an asset-by-asset calculation as a matter of law.

BP alleges various other substantive deficiencies in the assumptions, analyses, and conclusions of Flint Hills' damages experts. (R. 247-1 at 10-13.) For reasons already explained, however, the Court declines to rule on whether Flint Hills' diminution-in-value experts are barred because of their use of discounted projected cash flow analyses. As for BP's other

objections, the material the parties have provided to the Court is simply insufficient to permit a determination on these expert matters.  BP, for example, argues that Ms. Bettius relies on factually incorrect assumptions and uses an improper method of calculating Flint Hills' claimed diminution damages.  (*Id.* at 11; R. 352-1 at 13-14.)  BP has not appropriately developed these arguments in this motion.  Nevertheless, because the expert reports are not deficient on their face, the Court will consider them in deciding this summary judgment motion.  The evidence, including the expert opinions, viewed in a light most favorable to Flint Hills, creates a genuine question of material fact on the proper amount of damages to survive summary judgment.  *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 633-34 (7th Cir. 2007) (finding that expert testimony can serve as the basis for calculating damages to a reasonable certainty); *American Nat'l Bank & Trust Co. v. K-Mart Corp.*, 717 F.2d 394, 399 (7th Cir. 1983) ("The question of value is, of course, the proper subject for expert testimony.").

C.    **Disproportionality of Cost-of-Repair Damages Is a Disputed Question of Fact**

BP further contends that Flint Hills' claimed cost-of-repair damages are grossly disproportionate to the value of the items repaired.  (R. 247-1 at 13.)  BP apparently reasons that this triggers the exception for using diminished value as the appropriate measure of damages and, since the PSA bars recovery of diminished value damages and Flint Hills' evidence of those damages is legally deficient, Flint Hills cannot recover its cost-of-repair or its diminution-in-value damages as a matter of law.  Under Illinois law, cost-of-repair damages cannot be recovered when they are unreasonably disproportionate to the benefit of the repaired assets received by the non-breaching party.  BP specifically argues that, as a matter of law, Flint Hills

15

cannot recover its claimed repair and replacement costs because they are grossly disproportionate to the amount Flint Hills paid for the Joliet Plant and to the "purchase price allocation values agreed to by BP Amoco and [Flint Hills]."  (R. 247-1 at 13-14.)

BP would have the Court "compare the cost of correcting the defects to *the original contract price*.  This is not the law.  The test calls for the use of the diminution-in-value standard if the cost to correct the defects is unreasonably disproportionate in relation to *the benefit to the purchaser*.  This does not require a comparison to the original contract price, although that figure may be relevant in determining the benefit received by the purchaser."  *Arch*, 288 Ill. App. 3d at 1083, 224 Ill. Dec. at 430, 681 N.E.2d at 1051; *Meyers*, 374 Ill. App. 3d at 453-54, 312 Ill. Dec. at 772, 871 N.E.2d at 172 ("[W]here . . . costs are unreasonably disproportionate to the benefit of the purchaser (of which the price of the contract is a part), the measure of damages is determined by the diminution in value of the property as a result of the defects.").  Accordingly, the jury may properly consider the contract price in determining whether Flint Hills' claimed repair costs are disproportionate to the benefit of such repairs, but neither the contract price nor the allocated values discussed below are determinative as to which damages measure applies.

BP further argues that Flint Hills seeks to recover repair costs incurred for certain assets which significantly exceed Flint Hills' own allocated values of those assets.  BP specifically contends specifically that the purchase price allocation document, created post-closing, dictates the amount Flint Hills paid for and is the best evidence of the as-represented market value of each allocated item.  (R. 247-1 at 11, 13-14.)  Section 5.6 of the PSA provides that "Buyer and Seller shall be bound by such agreed Purchase Price allocation for all purposes, and neither party shall take any contrary position regarding such allocation in any Tax Return, or otherwise."  (R.

248-1, BP's Rule 56.1 Stmt. Facts ¶ 10.) While Flint Hills itself states that "the best evidence of the market value of anything is usually the actual selling price," it contends that the post-closing purchase price allocations do not represent the negotiated fair market value of the individual components of the transaction. (R. 324-1 at 17, 19.) The purchase price allocations are binding to the extent provided by the PSA; however, as noted above, their relevance in the damages inquiry is a matter for the jury.

Whether Flint Hills' claimed cost-of-repair damages are unreasonably disproportionate to the results obtained—the threshold factual finding triggering recovery of diminution-in-value damages—is a disputed question of fact for the jury. *Arch*, 288 Ill. App. 3d at 1082-83, 224 Ill. Dec. at 430, 681 N.E.2d at 1051 ("[T]he jury should be instructed that the usual measure of damages is the cost of correcting the defects and that the diminution-in-value method applies only if it finds that one of the two exceptions exist."); *City of Chicago v. Reliable Truck Parts Co.*, 822 F. Supp. 1288, 1294 (N.D. Ill. 1993) ("[I]t is the trier of fact's obligation to determine what calculation of damages to apply . . . ."); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 362, 264 Ill. Dec. 283, 306, 770 N.E.2d 177, 200 (Ill. 2002) ("[O]nly the jury could determine which measure of damages to apply because the alternative measure could only be applied after a factual finding." (citation and internal quotation marks omitted)). Accordingly, the Court cannot, as a matter of law, find that Flint Hills is not entitled to recover repair costs. *See Chem. Waste Mgmt. v. Sims*, 939 F. Supp. 599, 602-03 (N.D. Ill. 1996).

III. **Flint Hills' Cost-of-Repair Damages**

BP asserts three separate arguments for finding that Flint Hills' cost-of-repair evidence

on varying claims is legally deficient. BP first argues that Flint Hills seeks excessive damages on some of its claims. (R. 247-1 at 14-15.) BP next contends that Flint Hills' evidence on various claims is insufficient as a matter of law to permit a jury to determine the proper amount of damages with reasonable certainty. (*Id.* at 15-16.) BP further maintains summary judgment is warranted on other claims which have no causal link to any alleged breach of the PSA's representations. (*Id.* at 16-17.)

### A.     Jury Responsibility to Prevent Impermissible Betterment

BP seeks summary judgment on those of Flint Hills' claims which seek indemnification for costs incurred to restore allegedly defective assets to better condition than BP represented in the PSA, such as costs for replacing used, depleted assets with brand new or upgraded equipment. (R. 247-1 at 14.) That is, according to BP, Flint Hills is pursuing damages greater than required to compensate it for any alleged breach. (*Id.*) Flint Hills responds that the PSA does not prohibit betterment; rather, the PSA provides that BP will indemnify Flint Hills for "all losses that arise out of or result from any breach of representation." (R. 324-1 at 20-21.) Flint Hills reasons that the PSA thus requires indemnification for the allegedly reasonable, necessary, and cost-efficient expenses it incurred to restore the defective assets. (*Id.*) As noted above, Illinois law is an overlay on the PSA's exclusive remedy scheme. Under Illinois law, damages for breach of contract should place the injured party in the position it would have been in had the contract not been breached. Contract damages should neither place the injured party in a better position nor result in a windfall recovery. *Platinum Tech.*, 282 F.3d at 932. Thus, Flint Hills can recover cost-of-repair damages only in the amount necessary to restore the defective assets to their represented condition.

18

BP identifies a number of Flint Hills' claims as seeking an impermissible betterment. After BP filed this motion, Flint Hills modified its damages claims and, as a result, BP's betterment argument in this motion does not reasonably apply to the updated versions Claims 72 and 77. (R. 324-2, Ex. 1 to Def.'s Opp'n Br. at 3.) For the five other claims BP challenges with this betterment argument (Claims 17, 48, 56, and 58), summary judgment is inappropriate because the precise amount of damages to which Flint Hills may be entitled is a question of fact for the jury. *See Tri-G*, 222 Ill. 2d at 247, 305 Ill. Dec. at 601, 856 N.E.2d at 406. On Flint Hills' production capacity claim (Claim 21), for example, the Court already has concluded that Flint Hills has presented specific facts establishing a genuine issue for the jury—namely, the intended meaning of the production capacity representation and whether the "annualized maximum demonstrated sustainable production" ("AMDSP") of the three production units was as represented in the PSA on the date of the closing, as AMDSP will eventually be interpreted. (R. 319-1, 2/23/2009 Opinion.) Based on these underlying factual determinations, the trier of fact applying a cost-of-repair measure of damages must determine what costs have been or will be incurred in order to permit the production units to operate at their represented AMDSP rates. Accordingly, the Court cannot conclude what amount of damages, if any, is sufficient, but not greater than required, to compensate Flint Hills for BP's alleged breach of the production capacity representation. Rather, the jury, charged with applying Illinois law, is responsible for determining the correct amount of damages necessary, but not greater than required, to compensate Flint Hills for any supposed breach—if applying a cost-of-repair measure, the amount necessary to restore the defective assets to their represented condition. *Tri-G*, 222 Ill. 2d at 252, 305 Ill. Dec. at 604, 856 N.E.2d at 409 ("A jury's discretion in awarding damages is

limited by the parameters of what the law will allow, and it is the court's instructions which hopefully assist the jury." (quoting *Creek v. Village of Westhaven*, 144 F.3d 441, 147 (7th Cir. 1998))). In sum, viewing the evidence in a light most favorable to Flint Hills, a question of fact exists as to what amount of damages, if any, is necessary to compensate Flint Hills for BP's alleged breach.

**B.      Flint Hills Has Produced Sufficient Evidence for Jury To Determine Damages with Reasonable Certainty**

"Illinois law . . . clearly requires that damages be proved to a reasonable certainty." *TAS Distrib.*, 491 F.3d at 635; *Haslund v. Simon Prop. Group, Inc.*, 378 F.3d 653, 658 (7th Cir. 2004); *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 106-07, 305 Ill. Dec. 15, 34, 854 N.E.2d 607, 626 (Ill. 2006). BP contends that Flint Hills' speculative and uncertain evidence on certain claims does not meet this requirement. (R. 247-1 at 15.) At summary judgment, Flint Hills need only produce evidence sufficient to permit the jury to calculate damages to a reasonable degree of certainty. *See TAS Distrib.*, 491 F.3d at 635-36 ("The evidence before us on summary judgment simply does not establish a basis upon which damages can be calculated to a reasonable degree of certainty."). Flint Hills has met its summary judgment burden.

Flint Hills' damages evidence is not mere speculative guesswork or conjecture of future costs.[6] To the contrary, it would permit a jury to ascertain the appropriate measure and amount of damages to a reasonable certainty. *See U.C. Castings Co. v. Knight*, 754 F.2d 1363, 1374 (7th Cir. 1985) ("[O]nly a reasonable basis of computation is required for the submission of the question of damages to the jury." (citation omitted)). Flint Hills admits that it seeks indemnity

_____

[6] Flint Hills has elected not to pursue damages on a substantial portion of the estimated future spending which BP identified under this argument. (R. 234-1 at 22.)

for expenses it plans to incur in the future, but argues that there is no legal bar to such recovery. (R. 324-1 at 22.) Given the broad "exclusive" damages permitted by Section 13.2 and the gap-filling role of Illinois law, however, Flint Hills may properly recover future repair costs as long as the indemnified costs are both reasonably certain to occur and can be calculated with reasonable certainty. "[D]amages cannot be based on potential or future loss, unless it is reasonably certain to occur." *Platinum Tech.*, 282 F.3d at 933; *see Kunkel v. P.K. Dependable Constr., LLC*, 387 Ill. App. 3d 1153, 327 Ill. Dec. 648, 654, 902 N.E.2d 769, 775 (Ill. App. Ct. 2009) ("An estimate of the cost of repairs by a person qualified in a certain class of work, while not as persuasive as it might be, is nonetheless admissible as a basis upon which a reasonable cost may be determined." (citation and internal quotation marks omitted)); *Jones v. Consolidation Coal Co.*, 174 Ill. App. 3d 38, 43, 123 Ill. Dec. 649, 653, 528 N.E.2d 33, 37 (Ill. App. Ct. 1988) ("Estimates of the cost of repair are acceptable evidence of damages incurred."). Flint Hills' evidence, including repair estimates and deposition testimony, supports a reasonably certain determination of the costs of repair projects to be undertaken in the future and a similarly definite finding that Flint Hills intends to undertake those projects and actually incur those costs. (Def.'s Stmt. Add'l Facts ¶¶ 9-12.) Flint Hills' plant manager, for example, testified that Flint Hills "expects that we would address this issue [the wastewater treatment project] and we plan to do that." (*Id.* ¶ 10.) BP is free to argue to the jury that Flint Hills' damages estimates are not firm or final numbers and are unlikely to ever be incurred. (*See* BP's Resp. to Def.'s Stmt. Add'l Facts ¶¶ 9-12.)

In sum, it is the jury's responsibility to award damages that reasonably approximate what it will cost Flint Hills to restore the defective equipment to its warranted condition. Viewed in

the light most favorable to Flint Hills, Flint Hills' evidence would permit a jury to determine with a reasonable degree of certainty what repair costs Flint Hills is reasonably certain to incur in the future and what amount of damages is proper.

### C.      Disputed Questions of Fact Exist as to Causation

It is well settled that "the party requesting damages must show causation, that is that the alleged breach is the cause of those damages." *TAS Distrib.*, 491 F.3d at 633; *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 149, 296 Ill. Dec. 448, 479, 835 N.E.2d 801, 832 (Ill. 2005) (reciting "basic theory of damages for breach of contract, under which the claimant must establish an actual loss or measurable damages resulting from the breach in order to recover"). This legal requirement is consistent with Section 13.2 of the PSA, which requires BP to indemnify Flint Hills for Losses that "arise out of, relate to or result from" any breach. (R. 14-3 at 163, PSA § 13.2(a).) "Illinois courts indicate that proximate cause should ordinarily be decided not as a matter of law, but by a trier of fact." *TIG Ins. Co. v. Giffin Winning Cohen & Bodewes, P.C.*, 444 F.3d 587, 591 (7th Cir. 2006). Summary judgment is nonetheless "appropriate when the undisputed facts establish that a plaintiff cannot show the requisite causation as a matter of law." *Shepard v. State Auto. Mut. Ins. Co.*, 463 F.3d 742, 745 (7th Cir. 2006).

BP argues that Flint Hills has failed to show that any alleged breach of contract or fraud proximately caused certain of Flint Hills' claimed damages.[7] (R. 247-1 at 16-17.) BP contends,

---

[7] Although BP identifies in its memorandum three separate claims that purportedly do not meet the causation requirements, it also attaches a chart listing "claims where FHR seeks damages that were not proximately caused by an alleged contractual breach or fraud . . . ." (R. 247-1 at 17; R. 247-2, App. D to BP's Br. Supp. Mot. for Partial Summ. J. at 8-12.) This chart does not develop the arguments that BP has the responsibility of developing in order to support

for example, that Flint Hills' damages for Claim 50 include costs that were incurred as a result of federal environmental regulatory standards ("HON" requirements). (R. 247-2 at 10.) BP points to Flint Hills' internal documents which suggest that Flint Hills performed the inspections because of the HON requirements, not to remedy a defect which existed at closing. (BP's Stmt. Facts ¶ 31.) Flint Hills contends that it would not have incurred the associated costs if BP Amoco had repaired the tanks prior to the sale as the PSA allegedly required. (Def.'s Stmt. Add'l Facts ¶ 25.) Viewing the conflicting evidence in a light most favorable to Flint Hills, whether BP's alleged breach or regulatory requirements caused a portion of the repair cost damages on Claim 50 is a disputed question of fact.[8] In sum, genuine issues of material fact preclude summary judgment on BP's causation arguments.

## IV.    Punitive Damages on Fraud Claims

Finally, BP argues that Flint Hills cannot recover punitive damages on its fraud claims. According to BP, the PSA's punitive damages waiver applies to any claim arising in connection with the PSA, including fraud claims. In addition, BP maintains that Flint Hills lacks sufficient evidence to warrant the extraordinary punitive damages remedy. (R. 247-1 at 17-18.)

---

summary judgment. The chart sets forth claims with no analysis. Furthermore, the chart appears to be an attempt to circumvent the page limit for a memorandum supporting a summary judgment motion.

[8] Moreover, BP's causation arguments on Claims 16/70, 17, 31, 39, 54, 58, 66, and 67 are really arguments that particular assets were not defective as of the closing. (R. 247-2 at 8-11, App. D to BP's Br. Supp. Mot. for Partial Summ. J.) Flint Hills concedes that it cannot collect damages for assets which complied with the PSA's representations as of the closing, but argues that the record shows that its claimed damages—the costs incurred to bring particular assets into PSA-represented condition—arose to remedy defects that existed at closing. (R. 324-1 at 22.) As the Court has already found in denying summary judgment on the production capacity and condition-of-assets claims, the conflicting evidence reveals a genuine question of fact for the jury as to which assets, if any, were not as warranted at closing.

23

**A.     The PSA Does Not Expressly Preclude Punitive Damages for Fraud Claims**

The third paragraph of Section 13.6 of the PSA expressly states: "Each party agrees that it will not seek and hereby expressly waives any and all rights to or for punitive or exemplary damages as to any Direct Claim arising in connection with this Agreement."  (BP's Stmt. Facts ¶ 9.) While this broad punitive damages waiver appears to apply to all claims including fraud claims, it is clear from a plain reading of the PSA that this waiver is limited in scope.  *See Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 314 Ill. Dec. 133, 148, 874 N.E.2d 43, 58 (Ill. 2007) ("[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others.  The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." (citations omitted)).  Section 13.6—entitled Exclusive Remedy—specifically provides that "[e]xcept for . . . fraud, any claim or cause of action based on, arising out of or relating to this Agreement . . . must be brought by either Buyer or Seller, subject to the applicable provisions, conditions and limitations of this Agreement . . . , whether such claim arises out of contract, tort or otherwise."  (R. 14-3 at 188, PSA § 13.6.)  The second paragraph of Section 13.6, which states that Article 13 provides the exclusive remedy for matters covered by Article 13, contains an identical exclusion for fraud claims.  These provisions establish that fraud claims are outside any remedy limitations imposed by the PSA.  (R. 324-1 at 24.)  BP contends that because the exclusion of fraud claims is found in the first two paragraphs and is absent in the third paragraph, fraud must *not* be excluded from the punitive damages waiver in the third paragraph, otherwise the affirmative exclusion in the second paragraph would be superfluous.  (R. 352-1 at 18.)  Furthermore, BP notes that the definition of "Losses" expressly excludes "any liability relating to punitive damages to the extent such punitive

damages relate to a Direct Claim." (*Id.* at 18 n.7.)  These arguments fail, however, because fraud claims are expressly excluded from the limitations of the PSA and of Article 13—the same Article BP seeks to use to exclude punitive damages.  This conclusion is also consistent with Illinois' policy to strictly construe remedy limitations against the benefitting party.  *See Hicks*, 367 Ill. App. 3d at 1010-11, 306 Ill. Dec. at 609, 858 N.E.2d at 54.

**B.**    **At This Stage, BP Has Not Established As a Matter of Law that Flint Hills Cannot Recover Punitive Damages**

Punitive damages are awarded for the purpose of punishing the offender and to deter future similar acts of wrongdoing.  *Tri-G*, 222 Ill. 2d at 264, 305 Ill. Dec. at 610-11, 856 N.E.2d at 415-16. "Illinois allows punitive damages to be awarded when 'torts are committed with fraud, actual malice . . . or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.'"  *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004) (quoting *Cirrincione v. Johnson*, 184 Ill. 2d 109, 115-16, 234 Ill. Dec. 455, 458, 703 N.E.2d 67, 70 (Ill. 1998)).  Deceit alone cannot support an award of punitive damages.  *Id.*  Punitive damages are appropriate only if the defendant's misconduct rises above and beyond the conduct needed for the basis of the action.  *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 766 (7th Cir. 1994). While the amount of punitive damages is a question for the jury, the threshold decision of whether the facts of a particular case justify the imposition of punitive damages is a matter of law for the judge.  *Kapelanski*, 390 F.3d at 534; *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 276 (7th Cir. 1996); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 23 Ill. Dec. 559, 565, 384 N.E.2d 353, 359 (Ill. 1978).

Flint Hills has provided sufficient evidence to get over the hurdle at this stage by presenting evidence, which viewed in a light most favorable to it, could possibly support punitive damages.

(Def.'s Stmt. Add'l Facts ¶¶ 38-53.)  BP, however, is free to re-raise this issue with the Court

during trial and before the jury considers the issue.  *See MCI WorldCom Network Servs., Inc. v.*

*Atlas Excavating, Inc.*, No. 02 C 4394, 2006 WL 3542332, at *10 (N.D. Ill. Dec. 6, 2006).  After

careful review of BP's motion, Flint Hills' response, and the evidence in the record, however, BP's

motion for summary judgment on the issue of punitive damages is denied.

## CONCLUSION

In sum, cost of repair and diminution in value are permissible measures of damages under

the PSA.  Pursuant to Illinois law, Flint Hills can recover its preferred cost-of-repair damages

unless the jury finds that they are disproportionate to the results obtained by such repairs.  If the

jury so finds, Flint Hills is limited to recovering the difference between the value of the assets in

their warranted condition and their value as received at closing.  BP correctly argues that the

limitations and requirements of Illinois law control Flint Hills' potential recovery.  Nevertheless, as

disputed questions as to material facts exist which would permit Flint Hills to prevail, and as

otherwise explained above, BP's motion for partial summary judgment on Flint Hills' damages

claims is denied.


DATED: April 17, 2009                                    ENTERED

                                                          _____
                                                          AMY J. STEVE
                                                          United States District Court Judge


26