**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BP AMOCO CHEMICAL COMPANY, ) <br> ) <br>           Plaintiff/Counter–Defendant, ) <br> ) <br>    v. ) <br> ) <br> FLINT HILLS RESOURCES LLC, ) <br> ) <br>           Defendant/Counter–Plaintiff. ) <br> ) <br> FLINT HILLS RESOURCES LLC, ) <br> ) <br>           Third-Party Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> BP CORPORATION NORTH AMERICA INC., ) <br> ) <br>           Defendant. ) <br> ) | Consolidated Case No. 05 C 5661 <br><br> Judge Amy J. St. Eve |

**BP AMOCO CHEMICAL COMPANY'S AMENDED MEMORANDUM IN SUPPORT
OF MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50(a) AS TO
ALL OR PORTIONS OF FLINT HILLS RESOURCES LLC'S REPAIR COST
DAMAGES FOR CERTAIN CLAIMS**

Now that Flint Hills has closed its case, its own evidence demonstrates fundamental problems with Flint Hills' repair cost damages. For one claim, the problem is as simple as Flint Hills' failure to put into evidence the damages it seeks. But for most of the claims covered by the motion, the problem is that Flint Hills has overlooked the limitations on damages that were negotiated by the parties and included in the PSA, the contract on which Flint Hills premises its damages claims. In particular, PSA § 13.6 states that BP Amoco will not be liable to Flint Hills "for any … special, indirect, incidental, or consequential damages suffered by buyer, howsoever arising under the agreement." (Trial Ex. 1.001 at 121 § 13.6 ¶ 3) Yet, Flint Hills' own demonstratives, damages summaries, and supporting documents establish that various of Flint Hills' claims seek rental costs, testing and/or inspection costs, remediation costs, and similar indirect, incidental and/or consequential damages that § 13.6 bars.

Nor is § 13.6 the only section of the PSA that bars certain of Flint Hills' alleged damages. The evidence shows that Flint Hills also seeks to recover for services provided by its affiliates' personnel—which are barred under a separate PSA provision. In addition, Flint Hills has failed to mitigate its damages as required under both the common law and the PSA. In sum, the claimed damages subject to this motion and discussed in this memorandum are either (i) unsupported, (ii) barred by law, or (iii) prohibited under the PSA. Accordingly, judgment as a matter of law should be granted in favor of BP Amoco and against Flint Hills' cost-of-repair damages claims, in whole or in part, which are listed in this memorandum and in accompanying Exhibits 1-32.

## I. FLINT HILLS CANNOT RECOVER DAMAGES FOR UNSUPPORTED "INTERNAL JOURNAL ENTRIES."

As demonstrated by Flint Hills' damages summaries, for many of its claims Flint Hills seeks to recover for expenses described only as "FHR INTERNAL JOURNAL ENTRIES." (*E.g.*, Exs. 16, 17, 22) Flint Hills has provided no explanation of what these journal entries are for or how they could constitute damages in this case. When Matthew Daugherty, who sponsored Flint Hills' damages summaries, was asked about particular internal journal entries, he could not provide any explanation of what they were for and what the basis was for them. (Ex. 33, 10/13/09 Tr. at 4905:17-20) Instead, Mr. Daugherty testified generally that such entries were done to accrue costs or correct errors (*id.* at 10/13/09 Tr. 4903:14-4904:10), but nothing in the record evidence explains what costs were being accrued in those journal entries, what errors they were correcting, and whether those accrued costs or errors are properly charged to the claims in this case. The costs for these internal journal entries thus are unsupported and judgment as a matter of law should be granted against any damages sought in the internal journal entries. *See*, *e.g.*, *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 765 (7th Cir. 1998) (reversing jury verdict where plaintiff had failed to support its alleged damages); *Horina v. City of Granite City, Ill.*, 538 F.3d 624, 637 (7th Cir. 2008) (reversing award of damages where "the evidence relevant to the calculation of the award was lacking").

The internal journal entries that should be excluded from damages are:

- Claim 5, $985.80, Ex. 2
- Claim 9, $22,351.62, Ex. 4
- Claim 12, $133,126.54, Ex. 5
- Claim 16/70, $159,215.08, Ex. 7

2

- Claim 17, $117,464.13, Ex. 8
- Claim 18, $909.90, Ex. 9
- Claim 21, long-term waste water treatment project, $22,490.28, Ex. 12
- Claim 35, $1840.43, Ex. 14
- Claim 36, $14,207.19, Ex. 15
- Claim 38, $215,384.25, Ex. 16
- Claim 39, $203,936.72, Ex. 17
- Claim 45, $16,812.59, Ex. 19
- Claim 48, $884.71, Ex. 21
- Claim 50, $273,791.59, Ex. 22
- Claim 56, $30,765.60, Ex.. 25
- Claim 66, $17,540.45, Ex. 27
- Claim 67, $784.47, Ex. 28
- Claim 77, $137,505.45, Ex. 31

## II. FLINT HILLS CANNOT RECOVER RENTAL COSTS, WHICH ARE CONSEQUENTIAL DAMAGES BARRED UNDER THE PSA.

PSA, § 13.6 in relevant part provides:

SELLER WILL NOT BE LIABLE TO BUYER FOR ANY LOSS OF PROFIT, LOSS OF USE, SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES SUFFERED BY BUYER, HOWSOEVER ARISING UNDER THIS AGREEMENT … .

(Trial Ex. 1.001 at 121 § 13.6 ¶ 3 (capitalization in original)

Terms such as "special, indirect, incidental or consequential damages" have well-known definitions in the case law of Illinois, as well as elsewhere. "Consequential damages mean loss or injury that does not flow directly and immediately from the wrongful act of a party but are the consequences or results of such an act." *Hartford Accident & Indem. Co. v. Case Found. Co.*, 10 Ill. App. 3d 115, 124, 294 N.E.2d 7, 14 (Ill. App. Ct. 1973); *see also DP Serv., Inc. v. AM Int'l*, 508 F. Supp. 162, 167 (N.D. Ill. 1981) ("'Consequential damages are such as are not produced without the concurrence of some other event attributable to some origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequence or results of such act.'") (quoting 25 C.J.S. Damages § 2); 25 C.J.S. Damages § 3 (2009) (Consequential damages "are such damages as do not flow directly and

3

immediately from the act of the party, but only from the consequences or results of such act.") (footnotes omitted).

In particular, courts have held that costs to rent a substitute for a lost or damaged piece of equipment are incidental or consequential damages. *See*, *e.g., Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 913 F.2d 1194, 1202 (7th Cir. 1990) ("Cole's *incidental damages* would be based on that portion of its expenses it would not have spent had it known that the equipment would not produce at full capacity, such as additional payroll, *rental costs*, debt service costs, etc.") (emphasis added); *Albany Ins. Co. v. Bengal Marine, Inc.*, 857 F.2d 250, 253 (5th Cir. 1988) (disallowing costs "for the rental of replacement barge" where "the measure of damages does not include loss of use or other consequential damages"); *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 935 (Md. Ct. Spec. App. 2007) (describing "payments for rental for necessary substitute housing" in a case for failure to convey real property as "consequential damages"); *Chaurasia v. General Motors Corp.*, 126 P.3d 165, 169 n.1 (Ariz. Ct. App. 2006) (categorizing "rental expenses" as "consequential damages").

Categorizing rental costs as consequential damages makes sense because they are, at most, a consequence of the alleged breach. That is, rental costs are not direct damages from the breach such as the costs of repairing or replacing the equipment would be. *Compare Intrastate Piping*, 315 Ill. App. 3d 248, 256-57, 733 N.E.2d 718, 724 (Ill. App. Ct. 2000) (holding that contractual clauses "excluded all remedies except direct damages–the cost of the pipe"). Thus, such rental costs do not "flow directly and immediately" from the alleged injury. *Hartford*, 10 Ill. App. 3d at 124, 294 N.E.2d at 14.

Flint Hills repair cost damages claims include various rental costs that are barred as consequential damages under the PSA:

- For Claim 17, Flint Hills allegedly has spent $858,165.26 installing and renting a temporary water supply from a nearby quarry from two companies called Rain for Rent and Hatch Land Management LLC. (Ex. 8) Flint Hills also claims to have spent $335,636.15 in other indirect costs associated with renting the temporary water supply, such as transferring quarry water, installing a piping system, and repairing the quarry pump road. (*Id.*)
- For the MAN supplemental air portion of Claim 21, as explained below, Flint Hills has failed to put in any evidence of damages. Moreover, before trial Flint Hills asserted that it intended

to remedy the alleged constraint by renting an air compressor for some indefinite period. (Ex. 34, 2/13/09 Claim Chart at 4-5)

- For Claim 31, Flint Hills seeks $234,657.00 for a vendor named Aggreko Inc., which "supplied temporary cooling tower and associated piping during repairs of CU-403." (Ex. 13) Flint Hills also seeks $3,452.60 from Rain for Rent Inc., which provides a temporary water supply, another rental cost. (*Id.*)

- For Claim 47, Flint Hills seeks $38,857.81 to "provide temporary storage system for sulfuric acid." (Ex. 20)

- For Claim 77, Flint Hills seeks to recover $733,736.15 in rental damages: $169,857.10 for a rental boiler from 2007 to fall 2008; $170,512.10 for a rental boiler for winter 2008; and $393,366.95 to "fabricate and install rental boiler piping and other materials, prepare rental boiler for installation." (Ex. 31)

Additional rental costs are described in Exhibits 1-32. Judgment as a matter of law should be granted against all such rental costs.

### III. FLINT HILLS CANNOT RECOVER INSPECTION, TESTING OR REMEDIATION COSTS, WHICH ARE INCIDENTAL OR CONSEQUENTIAL DAMAGES

In addition to barring consequential damages, PSA § 13.6 also precludes incidental damages. (Trial Ex. 1.001 at 121 § 13.6 ¶ 3) Incidental damages are defined in sources including the Uniform Commercial Code as "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected … and any other reasonable expense incident to the delay or other breach." 810 ILCS 5/2-715; *see also Illiana Mach. & Mfg. Corp. v. Duro-Chrome Corp.*, 152 Ill. App. 3d 764, 770, 504 N.E.2d 974, 978 (Ill. App. Ct. 1987). Consistent with this definition, courts have held that costs for inspection and testing of equipment are incidental costs or are otherwise indirect costs. *See*, *e.g.*, *S.M. Wilson & Co. v. Reeves Red-E-Mix Concrete, Inc.*, 39 Ill. App. 3d 353, 358, 350 N.E.2d 321, 325 (Ill. App. Ct. 1976) ("Plaintiff chose to conduct tests approved in the industry to determine if the slab could be used. We believe the cost of these tests to be a … incidental expense…."); *Marquette Cement Mfg. Co. v. Louisville & Nashville R.R. Co.*, 406 F.2d 731, 732 (6th Cir. 1969) (affirming trial court ruling that "an amount paid to a laboratory for testing the cement" was "special damages for which the railroad could not be made to respond"); *Keller v. Inland Metals All Weather Conditioning, Inc.*, 76 P.3d 977, 984 (Idaho 2003) (describing sums "spent to have additional

5

testing of the water and air done" as "incidental damages"); *Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 603 P.2d 513, 527 (Ariz. Ct. App. 1979) (categorizing testing expenses as "consequential damages").

Importantly, Flint Hills frequently mixes the incidental testing or inspection costs with other elements of its damages, such as actual repairs. This is improper. Flint Hills bears the burden of proving the amount of its recoverable damages, and for these mixed amounts of damages the Court should grant judgment as a matter of law against the entire amount or at a minimum require Flint Hills to prove what part of the amount is recoverable damages. *See, e.g.*, *First Nat'l Bank of Elgin v. DuSold*, 180 Ill. App. 3d 714, 720, 536 N.E.2d 100, 104 (Ill. App. Ct. 1989) ("Since the bill does not itemize what cost was incurred for what work, there is no way to tell what amount was incurred for work that was done because there had been a breach of warranty. Thus, the trial court had no basis before it for awarding the damages for repairs in the amount of $839."); *Schoeneweis v. Herrin*, 110 Ill. App. 3d 800, 808-09, 443 N.E.2d 36, 42-43 (Ill. App. Ct. 1982) (upholding judgment for purchaser against vendor/builder for defects in house, but reversing the damage award and remanding for a new trial on the issue of damages because the costs of repair were not itemized in evidence, so as to distinguish repairs for which the purchaser was partly responsible); *see also Borah v. McCandless*, 205 P.3d 1209, 1216 (Idaho 2009) (finding no material breach where one party's failure to itemize costs incurred prevented the court from calculating the amount that might have been recoverable under the contract); *Polaris Indus. v. Plastics, Inc.*, 299 N.W.2d 414, 419 (Minn. 1980) (holding that the court had no reasonable basis for determining damages where the plaintiff failed to segregate losses due to breach from losses "due to all of the other variable and imponderable factors").

Flint Hills repair cost damages claim here include numerous costs of inspection and testing that are barred under as consequential damages under the PSA:

- For Claim 3, Flint Hills seeks $45,962.34 in damages for a fire protection compliance study, $1,986.54 paid to Elite Inspection Services, and $1,451.00 to Car Ber Testing Services. (Ex. 1)
- For Claim 8, Flint Hills seeks $2,773.32 for inspection and testing costs. (Ex. 3)
- For Claim 15, $458,481.00 of Flint Hills' alleged damages—nearly a quarter of the damages it seeks—were for an infrared leak detection test performed by Entech Engineering. (Ex. 6) In addition to being flawed and not supporting a breach of contract claim for the reasons

discussed below, this test is an incidental cost. Flint Hills also seeks to recover $18,496 for other testing or inspection costs. (*Id.*)

- For Claim 17, Flint Hills seeks inspection and testing costs for water well #5 as a portion or all of the $289,118.00 cost of Water Well Solutions Service Group Inc, as well as $1802.82 paid to Car Ber Testing Services. (Ex. 8)

- For Claim 18, Flint Hills seeks $1,207.00 in testing costs, including $175.00 for soil testing. (Ex. 9)

- For Claim 19, Flint Hills seeks $297.50 to "perform soil sampling for contamination." (Ex. 10) Flint Hills also seeks $3,711.54 paid to Elite Inspection Services. (*Id.*)

- For the KF silo portion of Claim 21, Flint Hills seeks $63,430 in testing costs by ARI Environmental, which are incidental expenses and also should be precluded because the Court held that those tests did not comply with the Title V permit as explained below. (Ex. 11)

- For the long-term waste water treatment project portion of Claim 21, Flint Hills seeks $445,762.23 in damages, some or all of which is for a pilot project. (Ex. 12; Ex. 35, 10/8/09 Tr. (Morris) at 4655:10-17) The costs for pilot project are not for the actual reactor itself that Flint Hills alleges it will install, but rather are for testing, and thus are incidental expenses.

- For Claim 31, Flint Hills seeks $19,523.27 in inspection costs. (Ex. 13)

- For Claim 35, Flint Hills' summary for this claim lists a single line item and work order, with a description of "repair tank floor and analyze soil samples" and a cost of slightly over $100,000. (Ex. 14) Analyzing soil samples is testing, and as explained above such testing is an incidental or special cost that is not recoverable under the PSA. Moreover, because Flint Hills fails to distinguish between recoverable costs and the unrecoverable testing costs, judgment as a matter of law should be granted against the damages for Claim 35 in their entirety. *See, e.g.*, *DuSold*, 180 Ill. App. 3d at 720, 536 N.E.2d at 104; *Schoenewei*s, 110 Ill. App. 3d at 808-09, 443 N.E.2d at 42-43. Alternatively, Flint Hills' damages summary lists expenses for both Heritage Environmental Services LLC and Interstate Environmental Services, LLC. (Ex. 15) These two environmental firms presumably performed the soil analysis, the cost of which is unrecoverable under PSA § 13.6. The combined expenses for these two firms is $37,236.80. Once this amount is subtracted from the $100,931.52 that

7

Flint Hills seeks, the total amount for Claim 35 falls below the minimum $75,000 threshold required by PSA § 13.4(a). (Trial Ex. 1.001 at 100 § 13.4(a))

- For Claim 36, Flint Hills seeks $10,543.86 for this claim with a description of "soil remediation – remove and replace soil." (Ex. 15) Flint Hills also seeks $3,292.25 in costs for Magnetec Inspection. (*Id.*)
- For Claim 38, Flint Hills seeks $938.37 for Car Ber Testing Services and $2,163.60 for Elite Inspection Services. (Ex. 16)
- For Claim 41, the costs Flint Hills seeks were presented to the jury as a single line item of "replace tank floor and take soil samples to test for contamination." (Ex. 18) Because Flint Hills has failed to separate out any recoverable costs from these unrecoverable testing and remediation costs, judgment as a matter of law should be granted against the entirety of Claim 41. *See, e.g.*, *DuSold*, 180 Ill. App. 3d at 720, 536 N.E.2d at 104; *Schoenewei*s, 110 Ill. App. 3d at 808-09, 443 N.E.2d at 42-43. Alternatively, at a minimum the costs for Clean Harbors Environmental Services Inc. of $19,912.61, which presumably relate the contamination and testing costs, should be excluded. Similarly, Flint Hills' lists $85,326.06 in costs for Fluor Maintenance Services Inc., some unspecified portion of which are for "Labor and Materials to Take Soil Samples Near NF-1604 Tank Floor Leaks." (Ex. 18) These costs for soil samples should not be recoverable, and because Flint Hills offers no further breakdown of the costs for Fluor, the entire amount should be excluded. *See, e.g.*, *DuSold*, 180 Ill. App. 3d at 720, 536 N.E.2d at 104; *Schoenewei*s, 110 Ill. App. 3d at 808-09, 443 N.E.2d at 42-43. Once this total of over $105,000 in unrecoverable costs is removed, the remaining damages are less than the minimum $75,000 threshold required by PSA § 13.4(a), and are barred in their entirety for that reason as well. (Trial Ex. 1.001 at 100 § 13.4(a)
- For Claim 45, Flint Hills seeks $37,608.30 for costs to inspect tubes and for other inspection costs. (Ex. 19)
- For Claim 48, Flint Hills seeks at least $66,800.27 related to inspection costs. (Ex. 21)
- For Claim 50, Flint Hills seeks $39,321.02 paid to Elite Inspection Services. (Ex. 22)
- For Claim 53, Flint Hills seeks $9.95 for materials used in an inspection. (Ex. 23)
- For Claim 54, which involves vent recuperative heater HE-1306A, Flint Hills seeks a total of $84,258.43 in inspection or testing costs. (Ex. 24) Moreover, Flint Hills' claimed costs

8

include $17,723.49 to inspect HE-1306*B*. (*Id.*) In addition to not being related to the equipment at issue, such inspection costs are incidental.

- For Claim 56, Flint Hills seeks damages including $77,745.67 for a "Joliet Site Electrical Assessment,"(Ex. 25), which is a cost for a plant-wide electrical system assessment. (Ex. 36, 10/7/09 Tr. (Morris) at 4359:25-4360:5) In addition, this claim includes an additional $83,550.39 for costs to "Clean, Inspect and Test Switchgear and Breakers at MCC Buildings." (Ex. 25)
- For Claim 58, Flint Hills seeks $8,244.10 in costs paid to Elite Inspection Services. (Ex. 26)
- For Claim 66, Flint Hills seeks $2,500.36 for testing that Iris Power LP, a Flint Hills affiliate, performed. (Ex. 27; Ex. 37, 10/21/09 Tr. (McKinney) at 6166:11-25)
- For Claim 67, Flint Hills seeks $3,675.00 for inspection and analysis of tube samples. (Ex. 28)
- For Claim 76, Flint Hills seeks $1,768.00 in costs paid to Car Ber Testing Services. (Ex. 30)
- For Claim 77, Flint Hills seeks damages including $30,575.23 to "evaluate remaining life on CB-704." (Ex. 31)

Additional costs for testing and/or inspections are described in Exhibits 1-32. Given the PSA's language, and the relevant authorities, such incidental or otherwise indirect costs for testing, inspections, and remediation are precluded under the PSA's plain language and should not be recoverable in this case.

### IV.   FLINT HILLS SEEKS ADDITIONAL PRECLUDED DAMAGES.

In addition to the categories of barred or unsupported damages Flint Hills explained above, many of Flint Hills claims also contain individual defects that prevent recovery of part or all of the damages Flint Hills seeks.

#### A.   Claim 15: Underground Piping Lines

In addition to excluding the testing costs for this claim as incidental damages, the costs for this claim generally should be excluded because they do not involve a breach of the PSA by BP Amoco. In this regard, it is undisputed that for Claim 15, Flint Hills hired Entech Engineering to conduct testing during late 2004. (Ex. 36, 10/7/09 Tr. (Morris) at 4307:12-15) Entech found 14 "anomalies" or possible leaks. (Ex. 38, 10/6/09 (Morris) at 4025:11-14) Between 2004 and 2008, Flint Hills excavated only three of these anomalies, and claims that it found one leak (though there is no documentation even of this single alleged leak). (Ex. 36,

9

10/7/09 Tr. (Morris) at 4313:21-4314:17) Flint Hills later hired another company, who found that for 10 of the 14 anomalies there were either no leaks, no anomalies, or not even any piping in the locations identified by Entech. (*Id.* at 4316:14-4317:10)

Testing and excavating to determine that BP Amoco was not in breach of the PSA, even under Flint Hills' interpretation of the contract, should not entitle Flint Hills to recover damages in the amount of the testing and excavations for the amounts claimed. It is well-settled that to recover for breach of contract, there must be a contract breach. Testing and excavation to determine that there was no contract breach cannot, in short, establish legally recoverable damages for a contract breach which did not take place. In accord with the jury instructions in this case, Flint Hills' cost-of-repair damages are limited to the "reasonable expenses necessary to put the property [Flint Hills] has purchased into the condition that it was represented and warranted to be in." (Dkt. 831, Breach of Contract No. 8) Because Flint Hills has failed to prove what portion of its damages relate to the four alleged leaks, the claim should be rejected in its entirety for failure of proof. *See, e.g.*, *DuSold*, 180 Ill. App. 3d at 720, 536 N.E.2d at 104; *Schoenewei*s, 110 Ill. App. 3d at 808-09, 443 N.E.2d at 42-43. Alternatively, in addition to all testing costs, at least 5/7 (10/14) of the total remaining claim for Claim 15 should be rejected as a matter of law, for otherwise, Flint Hills will be allowed to seek as "damages" costs which it voluntarily incurred which established no contract breach. *See*, *e.g.*, *Movitz*, 148 F.3d at 765 (reversing jury verdict where plaintiff had failed to support its alleged damages); *Horina*, 538 F.3d at 637 (reversing award of damages where "the evidence relevant to the calculation of the award was lacking").

### B. Claim 17: Water Well #4

In addition to large amounts of this claim being for unrecoverable rental costs and testing, Flint Hills does not seek any damages under this claim to actually repair water well #4. Instead, $2,298,528.18 of alleged damages for this claim are to "Purchase and Install New Water Well #5." (Ex. 8) Flint Hills is not seeking any damages to repair water well #4. Nor is Flint Hills replacing water well #4, as that well will continue to exist and is being used even after Flint Hills installed water well #5. Thus, there are no cost-of-repair damages for water well #4, and

judgment as a matter of law should be granted against the condition-of-asset portion of Claim 17 in its entirety.[1]

### C. Claim 18: MAN Unit Wastewater Sump

Flint Hills' Claim 18 for repair costs suffers from the additional defect that it ignores Flint Hills' duty to mitigate damages under PSA § 13.5(b) and the common law. (Trial Ex. 1.001 at 119 § 13.5(b)) Flint Hills ordered a replacement sump for the MAN unit. (Ex. 38, 10/6/09 Trial Tr. (Morris) at 4028:13-4029:22) Flint Hills then decided to repair the existing sump in the MAN unit and use the replacement sump in the TMA unit. (*Id.* at 4028:13-4030:4) Flint Hills' own witness, Rick Morris, admitted that it would be unfair for Flint Hills to recover for both sumps, and Flint Hills is now seeking to recover only for one of them. (Ex. 36, 10/7/09 Tr. at 4327:15-19, 4328:10-15)

But Flint Hills' one-or-the-other approach ignores the significant difference in cost between the two projects of repairing the MAN sump and replacing the sump in the TMA unit. Repairing the existing MAN sump costs $228,945.09, while the new sump costs $373,302.90. (Ex. 9) Because Flint Hills was able to repair the existing MAN sump at a lower cost, both PSA § 13.5(b) and the common law limit Flint Hills' recoverable repair cost damages for this claim to the lower-cost option—repairing the existing sump at a cost of $228,945.09.

### D. Claim 21: KF Silo

This claim seeks two kinds of unrecoverable damages. First, Flint Hills seeks $63,430 in testing costs. (Ex. 11) As discussed above, these testing costs are not the direct and immediate consequence of any alleged breach, and thus they are incidental or special costs that are prohibited under PSA § 13.6.

Independently, these costs are for the stack tests performed by ARI Environmental. (Ex. 11) This Court previously has held that ARI Environmental's stack tests did not comply with Title V's permit requirements and granted BP Amoco's motion to exclude those tests. (Dkt. 544 at 2, 4-5) In accord with the jury instructions in this case, Flint Hills' cost-of-repair damages are limited to the "reasonable expenses necessary to put the property [Flint Hills] has purchased into

---

[1] Flint Hills also claims that the costs to "purchase and install new water well #5" address alleged production capacity constraints at the Plant as part of its Claim 21 damages. This motion does not address Flint Hills' attempt to recover costs for water well #5 under this theory that are not otherwise barred by the PSA. BP Amoco notes, however, that well water is a constraint only if the production capacity representation is interpreted to represent simultaneous maximum capacity for all three units at maximum AMDSP rates. (*E.g.*, Ex. 39, 9/21/09 Tr. (Ogle) at 1821:4-25)

the condition that it was represented and warranted to be in." (Dkt. 831, Breach of Contract No. 8) Costs for tests that did not follow the requirements of the Plant's permit and that were excluded by the Court cannot be considered "reasonable expenses." Nor could such costs "necessary to put the property … into the condition that it was represented and warranted to be in," because this Court has held that they cannot show any violation of the PSA's representations. (*E.g.*, Dkt. 543 at 28-29)

The second kind of unrecoverable damages are at least a portion of the $861,425.00 that Flint Hills paid to Koch Modular Process Systems ("KMPS"). (Ex. 11) The evidence is undisputed that KMPS is an affiliate of Flint Hills. (Ex. 33, 10/13/09 Tr. (Daugherty) at 4919:20-4920:13; Ex. 40, 10/14/09 Tr. (Nicol) at 5165:8-14) The language of the PSA prohibits Flint Hills from recovering for time charged by personnel of KMPS: "Time expanded by personnel of Buyer or Seller or *their respective Affiliates*[2] in connection with a Direct Claim or Third Party Claim will not be considered Losses hereunder." (Trial Ex. 1.001 at 114 § 13.4(q)) The invoices whose costs Flint Hills seeks to recover include charges for an "Engineering Study" and "Process Design Phase," which by definition includes time spent by KMPS personnel working on aspects of the KF Silo project. (Ex. 41, Ex. 7878, KMPS Invoices[3]) Such costs are not recoverable under the plain language of the PSA.

Moreover, the KMPS invoices do not break out charges for personnel time from other charges such as materials. (Ex. 41, Ex. 7878, KMPS Invoices) Flint Hills' witnesses could not break out the time either. (Ex. 33, 10/13/09 Tr. (Daugherty) at 4921:1-3) Because Flint Hills did not separate what amounts are for unrecoverable services (*i.e.*, time expended by Koch personnel) and what amounts are for materials, the entirety of the KMPS costs should be excluded. *See, e.g.*, *DuSold*, 180 Ill. App. 3d at 720, 536 N.E.2d at 104; *Schoenewei*s, 110 Ill. App.3d at 808-09, 443 N.E.2d at 42-43.

---

[2] The PSA states that "'Affiliate' means any legal entity that, directly or indirectly, is controlled by, controls, or is under common control with, the entity in question." (Trial Ex. 1.001 at 2 § 1) The testimony of Mr. Daugherty establishes that KMPS and Flint Hills are under common control of the ultimate Koch parent. (Ex. 33, 10/13/09 Tr. (Daugherty) at 4920:10-13) (testifying that KMPS is "a legal entity that is owned by Mr. Koch" and agrees that it is one of the Koch family companies).

[3] Exhibit 7878 is not yet in evidence, but consists of invoices and similar documents that Flint Hills contends supports its alleged cost-of-repair damages.

### E. Claim 21: MAN Supplemental Air

One of the supposed production capacity constraints for which Flint Hills is suing is an alleged process air constraint with the MAN unit. (Ex. 39, 9/21/09 Tr. (Ogle) at 1644:2-4) Flint Hills has failed to put in any evidence of the costs necessary to resolve this alleged constraint, and thus judgment as a matter of law should be granted against this portion of Claim 21—an amount that Flint Hills claimed pre-trial was worth allegedly $158,000 in one-time costs and $317,200 per year in rental costs. (Ex. 34, 2/13/09 Claim Chart at 4-5)

### F. Claim 54: Vent Recuperate Heater

Flint Hills' Claim 54 alleges that a vent recuperative heater did not comply with the condition-of-assets representation in PSA § 7.1(d)(ii). The piece of equipment at issue in this claim is the HE-1306A vent recuperative heater, as confirmed by Flint Hills' own exhibit and claim chart. (Ex. 24; Ex. 34, 2/13/09 Claim Chart at 10) But Flint Hills' claimed costs also include $17,723.49 to inspect HE-1306*B* (Ex. 24)—a separate piece of equipment that Flint Hills does not contend breached the PSA. Flint Hills cannot justify charging BP Amoco for the costs of a test which determined that there was no breach of contract with respect to HE-1306B; by definition, such costs are not "reasonable expenses necessary to put the property [Flint Hills] has purchased into the condition that it was represented and warranted to be in." (Dkt. 831, Breach of Contract No. 8) Indeed, the testimony from Mr. Morris, Flint Hills' witness on cost-of-repair damages, regarding this claim does not discuss the inspection of HE-1306B. (Ex. 38, 10/6/09 Tr. (Morris) 4095:14-4097:4)

### G. Claim 66: MAN Air Compressor Motor

For Claim 66, Flint Hills seeks $2,500.36 for testing that Iris Power LP performed. In addition to being incidental costs barred under PSA § 13.6, Iris is a sister company of Flint Hills. (Ex. 37, 10/21/09 Tr. (McKinney) at 6166:11-25) Iris thus is an affiliate of Flint Hills, and all costs for the time of its personnel are barred under § 13.4 of the PSA. (Trial Ex. 1.001 at 114 § 13.4(q)) Because Flint Hills has not broken out the costs for Iris's personnel versus other items, judgment as a matter of law should be granted against the full costs for Iris. *See, e.g.*, *DuSold*, 180 Ill. App. 3d at 720, 536 N.E.2d at 104; *Schoenewei*s, 110 Ill. App. 3d at 808-09, 443 N.E.2d at 42-43.

13

## CONCLUSION

The costs set forth in this memorandum either violate the PSA's requirements, are inconsistent with the law, or are unsupported by the evidence. Therefore, judgment as a matter of law should be granted against the damages described herein and in Exhibits 1-32.

Dated: October 24, 2009

Respectfully submitted,

By:    /s/ R. Chris Heck
Richard C. Godfrey, P.C. (ARDC #3124358)
Scott W. Fowkes, P.C.(ARDC #6199265)
Drew G.A. Peel (ARDC #6209713)
R. Chris Heck (ARDC #6273695)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

*Attorneys for BP Amoco Chemical Company and BP Corporation North America*

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 24, 2009, I caused a true and correct copy of the foregoing to be served electronically via the CM/ECF system on the following:

  James Figliulo, Esq.
  Ryan P. Stiles, Esq.
  FIGLIULO & SILVERMAN, P.C.
  10 South LaSalle Street, Suite 3600
  Chicago, IL  60603

  Susan M. Franzetti, Esq.
  FRANZETTI LAW FIRM, P.C.
  10 South LaSalle Street, Suite 3600
  Chicago, IL  60603

                /s/ R. Chris Heck