**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FLINT HILLS RESOURCES, LLC,     )
        )
     Third-Party Plaintiff,    )
        )     Case No. 05 C 5661
     v.        )
        )
BP AMOCO CHEMICAL COMPANY,    )
        )
     Defendant.    )

## JURY INSTRUCTIONS

FILED

NOV - 5 2009
Nov 5 2009
JUDGE AMY ST. EVE
United States District Court

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy / prejudice / fear / public opinion to influence you. You should not be influenced by any person's or party's race, color, religion, national ancestry, sex, or place of incorporation.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

2

The evidence consists of the testimony of the witnesses and the exhibits admitted.

During the trial, certain testimony was presented to you by the reading of depositions and video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press reports or Internet materials you may have seen or heard. Such reports and materials are not evidence and your verdict must not be influenced by them in any way.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements, interim statements, and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

5

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

9

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

10

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

11

You may consider statements given prior to trial by a witness under oath as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, prior to trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a witness's prior inconsistent statements or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

It is proper for a lawyer to meet with any witness in preparation for trial.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Certain summaries offered by Flint Hills are in evidence. It is up to you to decide if the summaries are accurate.

Certain demonstrative exhibits have been shown to you. Those exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

Transcripts of the trial testimony will not be available for you to consult.

# THE FOLLOWING INSTRUCTIONS

## APPLY TO THE

## BREACH OF CONTRACT CLAIM

Flint Hills claims that BP Amoco breached the Purchase and Sale Agreement ("PSA") by breaching the following representations and warranties contained in Section 7.1(d)(ii) of the PSA:

1.  "Seller represents and warrants to Buyer, as of the date of this Agreement, and as of the Closing, as follows: . . . The annualized maximum demonstrated sustainable production of the TMA, purified isophthalic acid and MAN production units at the Joliet Plant are 71,000 metric tons, 170,000 metric tons, and 51,000 metric tons, respectively, with the product produced meeting Seller's standard specifications therefor, recognizing that such demonstrated capacity does not take into account planned or unplanned downtime."

2.  "Seller represents and warrants to Buyer, as of the date of this Agreement, and as of the Closing, as follows: . . . All of the Joliet Plant process units and buildings are structurally sound . . . ."

3.  "Seller represents and warrants to Buyer, as of the date of this Agreement, and as of the Closing, as follows: . . . [A]ll tangible Assets have been maintained substantially in accordance with normal industry practice . . . ."

4.  "Seller represents and warrants to Buyer, as of the date of this Agreement, and as of the Closing, as follows: . . . [A]ll tangible Assets . . . are in substantially good operating condition and repair for their age (taking account of their nature, normal wear and tear and continued repair and replacement in accordance with Seller's past practice) . . . ."

Because each representation and warranty in Section 7.1(d)(ii) of the PSA was made "as of the date of this Agreement, and as of the Closing," a representation and warranty was breached if it was untrue as of March 29, 2004 or May 28, 2004.

Flint Hills further claims that it sustained damages from BP Amoco's breaches of the foregoing representations and warranties.

BP Amoco denies that it breached any of the foregoing representations and warranties. BP Amoco further denies that Flint Hills sustained any damages from any such breach.

In determining whether the representations and warranties were breached, you should determine the meaning of the representations and warranties by considering the language of the PSA and the evidence presented by the parties.

I will now instruct you on the elements of liability for Flint Hills' breach of contract claim. Flint Hills has the burden of proving each proposition by a preponderance of the evidence:

First, the existence of a valid and enforceable contract.

Second, that Flint Hills substantially performed its obligations under the PSA.

Third, that BP Amoco, the seller, breached a representation and warranty.

Fourth, that as a result of the breach of contract, Flint Hills sustained damages that were caused by the breach.

If you find from your consideration of all the evidence that each of these propositions has been proved by a preponderance of the evidence, then your verdict should be for Flint Hills. On the other hand, if you find from your consideration of all the evidence that any one of these propositions has not been proved, then your verdict should be for BP Amoco.

23

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

Flint Hills is entitled to rely upon and to enforce each representation and warranty BP Amoco made in the PSA, even if at the time it was made Flint Hills suspected, or in fact believed, the representation and warranty was untrue.

The following terms used in the PSA mean, as a matter of law, as follows:

With regard to the representation and warranty that: "The annualized maximum demonstrated sustainable production of the TMA, purified isophthalic acid and MAN production units at the Joliet Plant are 71,000 metric tons, 170,000 metric tons, and 51,000 metric tons, respectively, with the product produced meeting Seller's standard specifications therefor, recognizing that such demonstrated capacity does not take into account planned or unplanned downtime." "Maximum" is an upper boundary which actual rates may fall below. "Downtime" means when the production units are not operating and, as a result, have zero output.

With regard to the representations and warranties that: "[A]ll tangible Assets have been maintained substantially in accordance with normal industry practice . . . ," and "[A]ll tangible Assets . . . are in substantially good operating condition and repair for their age (taking account of their nature, normal wear and tear and continued repair and replacement in accordance with Seller's past practice) . . . ." The term "all tangible Assets" includes each and every tangible asset at the Joliet Plant.

Section 13.5(a)(i) of the PSA requires that, in order to assert a claim under the PSA, Flint

Hills ("the Indemnified Party"):

> "shall with reasonable promptness send to the Indemnifying Party a written notice specifying, to the extent known, the nature of such Claim (or the basis of a claim which could give rise to Losses), setting forth the specific facts and circumstances that are the basis of such Claim in reasonable detail, the amount of Losses sought in such Claim (the actual amount of the Losses or, if practicable, a reasonable, good faith estimate thereof if the actual amount is not known or not capable of reasonable calculation) and the provisions of this Agreement in respect of which such right of Indemnification is claimed or arises (a "Claims Notice"), provided that, delay or defect in notifying the Indemnifying Party shall not relieve the Indemnifying Party of its obligations under this Agreement except to the extent that (and only to the extent that) the Indemnifying Party demonstrates (1) such failure shall have caused the Losses for which the Indemnifying Party is obligated to be greater than such Losses would have been had the Indemnified Party given the Indemnifying Party timely notice, and (2) the amount of such Losses . . . ."

The term "good faith" means honesty in fact and the absence of bad faith.

28

If you decide for BP Amoco on the question of liability for breach of contract, then you should not consider the question of breach-of-contract damages.

If you decide for Flint Hills on the question of BP Amoco's liability for breach of contract based on one or more representations and warranties, you will have the occasion to determine breach-of-contract damages. Flint Hills has the burden of proving the correct measure of damages by a preponderance of the evidence.

Flint Hills has the burden of proving a reasonable basis for its computation of damages. While Flint Hills is not required to prove damages with mathematical precision, the law requires that damages be proved with reasonable certainty. Damages cannot be based on conjecture and speculation. Flint Hills cannot recover for future damages unless they are reasonably certain to occur.

I will now give you more specific instructions about how to calculate damages for a breach of contract in this case.

The agreement between Flint Hills and BP Amoco is binding, and in the course of applying these instructions, you must abide by the following provisions of the agreement in determining the amount of damages for breach of contract, if any, in this case. I will also instruct you about Illinois law, and you are to follow this law in making your determination.

Article I of the PSA provides, in relevant part:

> "'Losses' means any and all losses, damages . . . , claims . . . , obligations . . . , liabilities, [and] costs. . . ."

Section 13.2(a) of the PSA provides, in relevant part:

> "To the fullest extent permitted by Law, [BP Amoco] . . . hereby agrees to Indemnify [Flint Hills], . . . from and against, any and all Losses incurred or required to be paid by [Flint Hills] . . . which arise out of, relate to or result from any of the following: (a) any breach of any warranty or representation of [BP Amoco] contained in Section 7.1."

Section 13.4(q) of the PSA provides, in relevant part:

> "Time expended by personnel of [Flint Hills] or . . . in connection with a [claim] will not be considered Losses hereunder."

Section 13.6 of the PSA provides, in relevant part:

> "[BP Amoco] will not be liable to Flint Hills for . . . loss of use, special, indirect, incidental, or consequential damages suffered by [Flint Hills], howsoever arising under this agreement, whether based on breach of warranty, breach of agreement, statute, strict liability or otherwise, including without limitation negligence of [BP Amoco]."

31

In calculating the damages that may be recovered for breach of contract, you should apply the following procedure.

With respect to each representation or warranty that you find was untrue, you should assess as damages those Losses arising out of, relating to, or resulting from the breach of contract. You have been presented with two alternative measures of damages: Cost of Repair and Diminution in Value. I will instruct you how to determine which measure of damages to apply here.

First, I will explain the Cost-of-Repair measure of damages.

Under the Cost-of-Repair measure of damages, a buyer is to be compensated by the seller for the reasonable expenses necessary to put the property he has purchased into the condition that it was represented and warranted to be in. Although this measure of damages is called the Cost of Repair, the buyer's damages are not limited to the costs of "repairing" the purchased property, but include reasonable expenses necessary to put the property into the condition represented and warranted in the PSA, including, in appropriate circumstances if shown by Flint Hills, the cost of replacing the purchased property.

You should not award Flint Hills damages that would put Flint Hills in a better position than if no breach had occurred and if the PSA's representations and warranties had been true.

Under the Cost-of-Repair measure, Flint Hills may recover its estimated future costs to put the purchased property into the condition represented and warranted, if you determine that Flint Hills has proved these costs are reasonably certain to occur.

33

Now I will explain the Diminution-in-Value measure of damages.

The Diminution-in-Value measure is the difference between the fair market value of the property purchased by Flint Hills and the fair market value that the property would have had if the property had been in the condition BP Amoco represented and warranted.

If you find a breach of contract based on one or more representations and warranties, you should assess as damages Flint Hills' reasonable expenditures necessary to put the purchased property into the condition represented and warranted, including the amount you find that Flint Hills is reasonably certain to incur in the future to do so, in accordance with the Cost-of-Repair measure, unless you conclude, from your consideration of the evidence, that such an amount would be unreasonably disproportionate to the benefit to the purchaser or grossly disproportionate to the results obtained, in which case you should instead award Flint Hills the difference between the fair market value of the purchased property as actually delivered, and the fair market value the purchased property would have had if the property had been in the condition represented and warranted, in accordance with the Diminution-in-Value measure.

It is for you to decide which of these two measures of damages to apply, and what the appropriate amount of Flint Hills' recoverable damages should be.

35

A party cannot recover damages it could have prevented by taking reasonable steps and using commercially reasonable efforts when it learned or should have learned of the breach. The burden is on BP Amoco to prove that Flint Hills failed to minimize its damages and that the damages should be reduced by a particular amount as a result.

In this case, BP Amoco claims and has the burden of proving that, by taking reasonable steps and using commercially reasonable efforts, Flint Hills could have avoided some losses in whole or in part, even though its losses originally resulted from BP Amoco's failure to keep its promise. If BP Amoco proves that Flint Hills could have avoided some losses in whole or in part by taking reasonable steps and using commercially reasonable efforts, you may not require BP Amoco to pay the amount Flint Hills could reasonably have avoided, and you must subtract any such amount from the amount of damages you have found. If you find that Flint Hills incurred costs in taking reasonable steps and using commercially reasonable efforts to avoid such losses, you must make an award to Flint Hills for such costs.

36

The purchase price allocation that you have heard evidence about is not a limit on the amount of damages that Flint Hills is permitted to recover in this case, if you find that damages are appropriate.

Because Flint Hills does not have a claim for lost profits in this case, you should not consider evidence of the actual post-sale financial performance of the PCBU or the Joliet Plant on any substantive issue in this case. You may only consider such evidence to the extent, if at all, it may affect the reliability of the pre-sale projections used by any expert witness.

# THE FOLLOWING INSTRUCTIONS

## APPLY TO THE FRAUD CLAIM

Flint Hills claims that the following representation made by BP Amoco in Section 7.1(d)(ii)

of the PSA was a false statement of material fact:

> "Seller represents and warrants to Buyer, as of the date of this Agreement, and as of the Closing, as follows: . . . The annualized maximum demonstrated sustainable production of the TMA, purified isophthalic acid and MAN production units at the Joliet Plant are 71,000 metric tons, 170,000 metric tons, and 51,000 metric tons, respectively, with the product produced meeting Seller's standard specifications therefor, recognizing that such demonstrated capacity does not take into account planned or unplanned downtime."

This representation will be referred to herein as the "Production Capacity Representation."

Because each representation and warranty in Section 7.1(d)(ii) of the PSA was made "as of

the date of this Agreement, and as of the Closing," the representation is false if it was untrue as of

March 29, 2004 or May 28, 2004.

I will now instruct you on the five elements of liability for fraud. Flint Hills has the burden of proving each of the following propositions by clear and convincing evidence:

First, that BP Amoco made a false statement of material fact.

Second, that BP Amoco either knew the statement was false, or believed the statement was false, or made the statement in reckless disregard of whether it was true or false. Alternatively, that BP Amoco knew the statement was capable of two interpretations, one of which it knew to be false and the other true, and BP Amoco made it:

(a) with the intention that it be understood by Flint Hills in the sense in which it is false, or

(b) without any belief or expectation as to how it would be understood by Flint Hills, or

(c) with reckless indifference as to how it would be understood by Flint Hills.

Third, that BP Amoco made the statement with the intent to induce Flint Hills to enter into the PSA.

Fourth, that Flint Hills reasonably believed the statement and entered into the PSA in justifiable reliance on the truth of the statement.

Fifth, that Flint Hills' damages resulted from such reliance.

If you find from your consideration of all the evidence that each of these propositions has been proved by clear and convincing evidence, then your verdict should be for Flint Hills. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved by clear and convincing evidence, then your verdict should be for BP Amoco.

41

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.

42

When I use the word "material" I mean the misrepresentation must have been an essential element to the transaction, and had Flint Hills been aware of the truth, it would have acted differently.

Reliance is "justifiable" when it is reasonable in light of all the circumstances. All the facts which Flint Hills had actual knowledge of as well as those it might have learned through the exercise of ordinary prudence must be taken into account. A party cannot justifiably rely on a representation when it knows the representation is false.

If you decide for BP Amoco on the question of liability for fraud, then you should not consider the question of fraud damages.

If you decide for Flint Hills on the question of BP Amoco's liability for fraud, you will have the occasion to determine damages for fraud. Flint Hills has the burden of proving a reasonable basis for its computations of damages. While Flint Hills is not required to prove damages with mathematical precision, the law requires that damages be proved with reasonable certainty. Damages cannot be based on conjecture and speculation. Flint Hills cannot recover for future damages unless they are reasonably certain to occur.

If you find for Flint Hills on the question of liability for fraud, you must then fix the amount of money which will reasonably and fairly compensate Flint Hills for its damages. Flint Hills must prove that its claimed damages were proximately caused by BP Amoco's fraud. When I use the expression "proximate cause," I mean a cause which, in the natural and ordinary course of events, produced Flint Hills' damages.

You should apply as the measure of damages either (1) the amount of reasonable expenses necessary to enable the purchased property to achieve the production capacity that BP Amoco represented to Flint Hills, including such expenses that will in the future be spent or incurred, if proven with reasonable certainty; or (2) the difference between the fair market value of the purchased property with its actual production capacity, and the fair market value the purchased property would have had, if it had the production capacity BP Amoco represented.

Whether either measure of damages has been proved by the evidence is for you to determine. You should not award Flint Hills damages that would put Flint Hills in a better position than if no fraud had occurred and if the PSA's representation and warranty had been true.

47

The law provides that a party cannot recover damages it could have prevented by exercising ordinary care and diligence when it learned or should have learned of the fraud. The burden is on BP Amoco to prove that Flint Hills failed to minimize its damages and that the damages should be reduced by a particular amount as a result. In this case, BP Amoco claims and has the burden of proving that, with reasonable efforts and ordinary care, Flint Hills could have avoided some losses in whole or in part, even though its losses originally resulted from BP Amoco's fraud. If BP Amoco proves that Flint Hills could have avoided some losses in whole or in part with reasonable efforts and ordinary care, you may not require BP Amoco to pay the amount Flint Hills could reasonably have avoided, and you must subtract any such amount from the amount of damages you determine. If you find that Flint Hills incurred costs in making a reasonable effort to avoid such losses, you must make an award to Flint Hills for such costs.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You many not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

Upon retiring to the jury room, you must select a foreperson. The foreperson will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your foreperson will fill in and date the appropriate form, and all of you will sign it.

You are free to deliberate in any way you decide or select whomever you like as a foreperson. However, I am going to provide some general suggestions on the process to help you get started. When thinking about who should be the foreperson, you may want to consider the role that the foreperson usually plays. The foreperson serving as the chairperson during the deliberation should ensure a complete discussion by all jurors who desire to speak before any vote. Each juror should have an opportunity to be heard on every issue and should be encouraged to participate. The foreperson should help facilitate the discussion and make sure everyone has a chance to say what he or she wants to say.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the foreperson, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. If you do submit a question, I must show it to the lawyers for each side and consult with them before responding. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.